[Civ. No. 45558. First Dist., Div. Two. Feb. 8, 1980.]

CITY OF WALNUT CREEK, Plaintiff and Appellant, v. COUNTY OF CONTRA COSTA et al., Defendants and Respondents; BEACON POINT ASSOCIATES et al., Real Parties in Interest and Respondents.

COUNSEL

Daniel J. Curtin, Jr., City Attorney, and Thomas R. Curry, Assistant City Attorney, for Plaintiff and Appellant.

John B. Clausen, County Counsel, and Silvano B. Marchesi, Deputy County Counsel, for Defendants and Respondents.

Maurice E. Huguet, Jr., Turner & Huguet, Howard N. Ellman and Ellman, Passovoy & Burke for Real Parties in Interest and Respondents.

OPINION

**ROUSE, J.**—Plaintiff, City of Walnut Creek (hereafter city) appeals from a judgment denying its petition for a writ of administrative mandamus pursuant to section 1094.5 of the Code of Civil Procedure. The city had sought to have the court order the defendants, County of Con-

tra Costa, Contra Costa County Board of Supervisors, Contra Costa County Planning Commission, and the Zoning Administrator of Contra Costa County (hereafter collectively referred to as county) to set aside a decision approving county land use permit No. 2012-77, which had been issued to real parties in interest Beacon Point Associates, Silverwood Development Company, Zocchi Company, Zocchi Bros., and Carlo Zocchi (hereafter collectively referred to as Beacon). The permit authorized Beacon to build an apartment complex (hereafter project) on an unincorporated portion of county land adjacent to the city.

Beacon is the owner of certain real property located in the County of Contra Costa comprising approximately 10.92 acres. On January 19, 1977, Beacon applied to the county for issuance of a land use permit to construct 224 residential dwelling units upon the property.

Under applicable provisions of the ordinances and other regulations of the county, a land use permit requires the county's land planning officials and governing body to consider a specific development proposal and to control the proposal, if approved, by the imposition of specific conditions calculated to preserve and enhance aesthetic, land use and environmental considerations. The process involves various county officials in specific project planning exercises including public hearings, the consideration of evidence and the fashioning of specific conditions applicable to the particular development.

On October 17, 1977, the zoning administrator held a public hearing to consider whether to grant the land use permit. After the public hearing, the zoning administrator decided to issue the permit for a maximum of 191 dwelling units (a reduction of 33 units from Beacon's original proposal) subject to further adjustments based upon final determinations of exact net acreage.

The city appealed the decision to the county planning commission, acting as a board of appeals. The planning commission rejected the city's appeal by official action taken on November 22, 1977. In rejecting the appeal, however, the commission further reduced the density in the project to 183 dwelling units.

The city appealed the commission's decision to the board of supervisors, and the board, after public hearing, affirmed the planning commission approval and finally issued land use permit No. 2012-77 to Beacon on March 14, 1978.

The city then commenced the instant action, alleging in its petition that the county failed to adequately mitigate the environmental impacts of the project which were identified in the environmental impact report (hereafter EIR). It also alleged that the county failed to require that the project be compatible with the county's general plan.

The trial court denied the petition. The court rejected the city's first allegation because it concluded that substantial evidence supported the county's finding that the environmental impacts identified in the EIR were adequately mitigated. The court did not address the question of whether the Beacon project was consistent with the county plan but rather based its decision on other grounds: (1) it held that it was inappropriate for the city to raise the argument at the trial level because it had failed to raise the issue at the administrative level; (2) it ruled that this issue was now moot because, at the time the petition was filed, the county was in compliance with its general plan; and (3) it concluded that, as a matter of law, there was no requirement that land use permits be consistent with general plans.

The city's first contention on appeal is that the county abused its discretion because the evidence does not support the county's finding that the conditions attached to the permit adequately and reasonably mitigate the adverse environmental impacts identified in the EIR.

Section 1094.5, subdivision (b), of the Code of Civil Procedure, states that an abuse of discretion occurs whenever the defendant has not proceeded in the manner required by law, when the order or decision is not supported by findings, or when the findings are not supported by the evidence.

 Subdivision (c) of section 1094.5 provides two tests for review of the evidence in abuse of discretion cases: the independent judgment rule and the substantial evidence rule. Unless a fundamental vested right is involved, the substantial evidence test is to be applied both by the trial court and the appellate court. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 510 [113 Cal.Rptr. 836, 522 P.2d 12]; *City of Carmel-by-the-Sea* v. *Board of Supervisors* (1977) 71 Cal.App.3d 84, 91 [139 Cal.Rptr. 214].) Cases involving abuse of discretion charges in the area of land use regulation do not involve fundamental vested rights (*Topanga, supra,* at p. 510; *Carmel-by-the-Sea, supra,* at p. 91). The city acknowledges that, in this in-

stance, the substantial evidence test is the appropriate standard. Therefore, issues before this court are whether there is substantial evidence to support the county's findings and whether the findings support the decision. (See *City of Carmel-by-the-Sea* v. *Board of Supervisors, supra*, at p. 91.) All conflicts must be resolved in favor of the prevailing party below and that party must be given the benefit of every reasonable inference.

In evaluating the adequacy of the findings, the key test is whether the findings apprise the parties of the basis for the administrative action (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra*, 11 Cal.3d 506, 515) and whether the responses to the EIR evidence good faith and reasoned analysis. (*San Francisco Ecology Center* v. *City and County of San Francisco* (1975) 48 Cal.App.3d 584, 596 [122 Cal.Rptr. 100].)

The city maintains that three of the six impacts were not adequately mitigated by the county: the aesthetic impact, the traffic impact and the density impact. In the resolution approving the project, the county addressed these impacts in the following manner:

### I. *The Aesthetic Impact*

In reporting upon Beacon's project as originally proposed, the EIR commented adversely upon the aesthetics. It stated that the project appeared "to be too regimented, dense and 'boxy'." During the course of the proceedings on the development permit and in the conditions of the permit, the county addressed that impact by (1) reducing the density by 18 percent from 224 units to 183 units; (2) requiring extensive revision of the site plan and unit design; and (3) requiring that final elevations, architectural design and building placement as shown on the site plan be subject to final review and approval of the county's zoning administrator prior to commencement of construction. A major part of the planning process and staff reports concerned itself with the EIR and such activity produced substantial evidence to sustain the county's actions. The staff reports submitted to the zoning administrator are the best example of such evidence since they dealt, specifically, with the EIR.

### II. *Traffic Impacts*

Addressing the project as initially proposed, the EIR stated that full buildout would yield 1,344 additional daily vehicle trips affecting, to

some degree, two roads identified as already approaching practical capacity. The county responded to the traffic impact problem in three ways: it required reduction of the project density, thus reducing daily vehicle trips; it noted that development of the project would enable the commencement of right-of-way and intersection improvement work; and it found that the existing road system could handle the additional traffic. In addition, the county planning director testified that the traffic along one of these two main roads would not be affected one way or the other by the project. Thus the record demonstrates that the county carefully considered and dealt with the traffic issue.

### III. *Density*

The EIR stated that the project as originally proposed exceeded density limitation. The county mitigated this impact by the most direct means: it required reduction in density to meet general plan limitations. The density issue is discussed in more detail below, since it is really at the heart of the city's second argument.

 These findings clearly apprise the parties of the basis for the county's action and evidence good faith and reasoned analysis; therefore, they are adequate to support the county's action. Furthermore, there is substantial evidence in the staff reports to support these findings.

The city argues that, since the county was required to make the density changes in order to comply with the zoning ordinances, the county did not take the action solely to mitigate the EIR impacts. The county's motivation, however, is irrelevant under section 21081 of the Public Resources Code. The only question is whether the impacts were mitigated, not why the agency chose to mitigate.

From a review of the staff reports, the EIR itself, and the written record of the testimony at the various administrative hearings, it is clear that there is substantial evidence to support the county's findings that the EIR impacts were adequately mitigated.

The city's second contention is that the county abused its discretion by issuing a permit which was not consistent with the county's general plan because the project density exceeded the density allowable under

the plan. An amendment to the county general plan adopted in May 1974, sets the density for an approximately 76-acre parcel of the county. Beacon's approximately 11 acres lie within this 76-acre parcel and are, therefore, regulated by this amendment.

On its face, the amendment appears to be somewhat ambiguous. It provides that, with the exception of a 10-acre school site, density within the 76-acre parcel shall be "7-12 units per net acre." However, a subsequent provision of the amendment states that "The land use proposals of this amendment will provide for a maximum of 660 residential dwelling units..." It is evident that, after eliminating from consideration the 10-acre school site, 66 acres remain to be developed. If one applies the "7-12 units per net acre" provision, a maximum of 792 units could be constructed. This conflicts with the subsequent provision of the amendment which limits construction to 660 units. The source of the 660 figure is not stated in the amendment, and it is not clear whether the drafters of the amendment intended the 660 limitation or the 12 units per net acre limitation to be controlling.

In the trial court, the city argued that the county acted in a manner inconsistent with its general plan because approval of the Beacon permit would violate the 660 limitation. As has been noted, the trial court rejected this argument for three reasons: the failure to raise the argument at the administrative level, mootness at the time the petition was filed, and the lack of a requirement that land use permits be consistent with general plans. We conclude that the first of the three grounds stated is sufficient to affirm the trial court's decision.

In administrative mandamus actions brought under section 1094.5 of the Code of Civil Procedure, appellate review is limited to issues in the record at the administrative level. "It is fundamental that the review of administrative proceedings provided by section 1094.5 of the Code of Civil Procedure is confined to the *issues* appearing in the record of that body as made out by the parties to the proceedings, though additional *evidence*, in a proper case, may be received. [Citation.] It was never contemplated that a party to an administrative hearing should withhold any defense then available to him or make only a perfunctory or 'skeleton' showing in the hearing and thereafter obtain an unlimited trial de novo, on expanded issues, in the reviewing court. [Citation.] The rule compelling a party to present all legitimate issues before the administrative tribunal is required in order to preserve the

integrity of the proceedings before that body and to endow them with a dignity beyond that of a mere shadow-play. Had [appellant] desired to avail herself of the asserted bar of limitations, she should have done so in the administrative forum, where the commissioner could have prepared his case, alert to the need of resisting this defense, and the hearing officer might have made appropriate findings thereon. 'Having failed to raise the defense of the statute of limitations before the commission, the appellant waived his right to that personal defense.'" (*Bohn v. Watson* (1954) 130 Cal.App.2d 24, 37 [278 P.2d 454], citing *Cal. Employment Com.* v. *MacGregor* (1944) 64 Cal.App.2d 691, 693 [149 P.2d 304].)

The city contends that, in this case, the above rule is inapplicable for three reasons. First, it argues that, while it did not specifically raise the 660 limitation at any of the administrative hearings, it did raise the general issue of density. We note, however, that the city's density argument was based upon its own city plan and not upon the county's plan. The basis of all the city's density arguments was that the proposed density of the project was far in excess of the density of the city land adjacent to the project and of the density which the city had proposed for the unincorporated parcel in question. The county did consider this argument and lowered the project density, at least in part, to be more compatible with the city plan. Raising this density argument did not relieve the city of its obligation to confront either the zoning administrator, planning commission or board of supervisors with the 660 limitation question. That limitation is a totally different issue than the one concerning the city's general plan. It is evident that the county was never given the opportunity to meet this issue at the administrative hearings.

The city maintains that no prejudice resulted from its failure to raise the 660 limitation because the county must have been aware of its own plan. This argument is not persuasive. Even though the county was presumably aware of its plan, the amendment governing the area where the Beacon project is to be located appears on its face to be ambiguous. The city's failure to raise the 660 limitation prior to trial has resulted in an administrative record which does not set forth the county's interpretation of the amendment and, in particular, any explanation of the two, apparently conflicting, density limitations. On the administrative record before us, it is impossible to determine whether the county abused its discretion and violated its own general plan by approving the Beacon permit.

Finally, the city argues that the policy behind *Bohn* v. *Watson, supra,* 130 Cal.App.2d 24, and similar cases,[1] is to avoid turning the administrative hearings into mere "shadow-play," where the key issues are not met; also, to avoid surprising the opposing party on appeal. Here, the city points out that it argued density throughout the administrative hearings; thus, it claims, even though it did not specifically mention the 660 limitation, it cannot be accused of "shadow-play."

That argument is untenable for two reasons. First, regardless of its motives, the city's failure to raise the 660 limitation argument did have the effect of turning the administrative hearings into "shadow-play," in the sense that a key issue in the case was not specifically dealt with. The fact that the city may not have intended to avoid an administrative determination of this issue does not negate the policy reasons for refusing to allow it to raise the issue for the first time in the trial court.

Second, there is a strong policy reason for allowing the governmental body which passed legislation to be given a chance to interpret or clarify its intention concerning that legislation. ▮ The construction placed on a piece of legislation by the enacting body is of very persuasive significance. (*California Housing Finance Agency* v. *Patitucci* (1978) 22 Cal.3d 171, 175 [148 Cal.Rptr. 875, 583 P.2d 729]; *Methodist Hosp. of Sacramento* v. *Saylor* (1971) 5 Cal.3d 685, 693 [97 Cal.Rptr. 1, 488 P.2d 161].) Also, construction of a statute by officials charged with its administration must be given great weight. (*Sanchez* v. *Unemployment Ins. Appeals Bd.* (1977) 20 Cal.3d 55, 67 [141 Cal.Rptr. 146, 569 P.2d 740]; *Worthington* v. *Unemployment Ins. Appeals Bd.* (1976) 64 Cal.App.3d 384, 389 [134 Cal.Rptr. 507].) In this instance, the very agencies which created the law in their legislative roles also applied the law in their adjudicatory roles. The appropriate time to first raise the 660 limitation was at the hearings before the various county bodies. The failure of the city to adequately raise and deal with the issue at those hearings leaves this court in the position of having to engage in pure speculation concerning the county's rationale in approving more than 660 units. We may not indulge in such luxury.

▮ For these reasons, we have concluded that the city's failure to raise this argument at the administrative level precludes it from being raised in its petition for administrative mandamus. On this basis we re-

---

[1]See also *Dare* v. *Bd. of Medical Examiners* (1943) 21 Cal.2d 790, 799 [136 P.2d 304].

ject the contention that the county abused its discretion by approving a permit which was inconsistent with the county's general plan.

The judgment is affirmed.

Taylor, P. J., and Miller, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 3, 1980.