[No. A028421. First Dist., Div. Five. Feb. 21, 1986.]

MARV PAOLI, Plaintiff and Respondent, v.
CALIFORNIA COASTAL COMMISSION, Defendant and Appellant.

COUNSEL

John K. Van de Kamp, Attorney General, N. Gregory Taylor, Assistant Attorney General, and Dennis M. Eagan, Deputy Attorney General, for Defendant and Appellant.

Ronald A. Zumbrun, Robert K. Best, Timothy Bittle and John H. Lee for Plaintiff and Respondent.

OPINION

HANING, J.—The California Coastal Commission (State Commission) appeals from a judgment granting respondent Marv Paoli a peremptory writ of administrative mandamus ordering the State Commission to issue a coastal development permit free of all open-space easement conditions. We conclude the trial court erred in issuing the writ.

In 1980 respondent filed an application with the North Coast Regional Coastal Commission (Regional Commission) for permission to construct a 10-unit inn, single family residence, dining room, and 16-space parking lot on 19.8 acres of unimproved land on Navarro Head, located approximately 20 miles south of Fort Bragg at the junction of State Highways 1 and 128 in Mendocino County. Navarro Head is described as a "critical view corridor" in Mendocino County's land use plan.[1] Respondent also sought permission to build an access road leading to the proposed inn along the path of an existing unimproved dirt road off Highway 1.

Permission was granted subject to nine conditions, only two of which are pertinent to the controversy herein. The Regional Commission staff determined that the proposed access road would "not be consistent with the Coastal Act's visual resource policies." Specifically, it concluded the paved road would "not blend into this highly scenic portion of the coast." Therefore, it proposed conditioning respondent's receipt of a permit on relocating the access road so that it adjoined Navarro Ridge Road instead of Highway 1. The permit was also conditioned to require the recordation of an open-space easement in a doughnut shape around the proposed inn "[t]o ensure

---

[1]The scenic importance of the area is described in near-lyrical fashion in the general plan: "[Navarro Head] is especially important because it is many visitors' introduction to the Mendocino coast. To travelers emerging from the dense redwood forest of Highway 128, the fog, wind, winding road and grassy hillsides above the high bluffs and surf convey the wildness and inaccessibility that make the drive worthwhile."

that the scenic resources of the portions of the terrace which are not proposed for development are not impaired . . . ."[2]

Respondent objected to the Regional Commission's proposed relocation of the access road, claiming it would increase construction costs by some $40,000 and also claiming Highway 1 access was critical in drawing visitors to the inn and restaurant. The Regional Commission held a hearing, and the condition requiring relocation of the proposed access road was deleted. Respondent was allowed to pave the existing dirt road off Highway 1 on the condition that landscaping would be utilized to reduce the adverse scenic impact of the road.

Although respondent consistently expressed opposition to the open-space easement condition during the review process, he chose to accept the Regional Commission's final approval of his permit (with the easement condition) and did not appeal. The grant of this permit was appealed to the State Commission by the Sierra Club. The Sierra Club argued that the access road should be relocated from Highway 1 as originally proposed.[3] The State Commission declined to hear the appeal finding "no substantial issue" was presented under the Coastal Act. (See Pub. Resources Code, § 30625, subd. (b)(1).)

One and one-half years later, Pacific Legal Foundation wrote a letter on respondent's behalf to the State Commission, which had succeeded to the responsibilities of the terminated Regional Commission under Public Resources Code section 30305. Respondent requested that his coastal development permit be amended to delete the open-space easement condition. The letter questioned the necessity of the easement to protect the view from Highway 1.[4] Respondent also wanted the easement condition struck because it reduced the value of his property and made development financing more difficult to obtain. The State Commission staff report recommended granting respondent's request to remove the doughnut-shaped easement but "only if the adverse visual effects of the project are mitigated through . . . [p]lacing an open-space easement over the northwest slope of the property [the area of the access road] . . . ."

---

[2]An open-space easement is an instrument whereby the owner relinquishes to the public the right to construct improvements upon the land, effectively preserving for public use or enjoyment the natural or scenic character of the open-space land. (See Gov. Code, § 51051.)

[3]The appeal focused on the visual impact of the road and questioned "how the undeveloped character of the area within the coastal view zone can be maintained."

[4]It was argued "the [open-space easement] condition would in fact provide no scenic protection because the area to be covered by easements is east of the ridgeline, on the downslope of the bluff top, and *not visible from Highway 1*. Because the condition was clearly intended to preserve the view but yet could not physically serve that purpose, it should be abandoned." (Italics in original.)

A hearing was held on respondent's amendment request on November 18, 1982. An understanding of the arguments made at that hearing is critical to an understanding of the issues on appeal. Respondent argued that the State Commission, when acting on the amendment application, could not shift the easement to the area of the access road because it had already been determined on the original permit application that the visual impacts of the access road were adequately mitigated by the landscaping conditions. Furthermore, since the inn would not be visible from Highway 1, the existing open-space easement around the inn served no purpose and was inappropriate. Therefore, respondent maintained, the permit should be amended and reissued free of *any* open-space easement conditions.

The State Commission staff report refuted the notion that the visual impacts of the access road and the structures were to be viewed independently with separate mitigation measures required for each use. Rather, the staff insisted that the original open-space easement was intended to mitigate the visual impact of the project *as a whole.* In other words, the State Commission staff took the position that in its original action on this permit, the Regional Commission had the option of mitigating the visual impacts of the *entire project* by placing an open-space easement on any portion of the property. It chose to place an open-space easement around the inn. The easement now could be moved to the northwest slope of the property because it would serve the same purpose of the original easement—mitigation of the visual effects of the project as a whole. The staff recommended the State Commission move the open-space easement to the access road area "resulting in a different area of open-space protection but nevertheless similar long term visual protection."

After spirited debate, the State Commission denied respondent's request to delete all open-space easement conditions from his development permit and approved the staff recommendation moving the open-space easement to the access road area.[5]

Respondent filed for writ of administrative mandamus challenging the open space easement condition imposed by the State Commission. (Code Civ. Proc., § 1094.5.) The trial court granted the writ and mandated the State Commission "to strike all open-space easement conditions from [re-

---

[5]One of the commissioner's comments gives an insight into the State Commission's reasoning process: "[T]here seem to be two different ways of doing the same thing which is to preserve as much as possible the open and pristine area of this hill allowing a developer a chance to go ahead with his project, and, in my view, the developer would be much better off with an easement on the front steep slope where a driveway is already going which then gives him a chance to expand around his building than the present sort of garter belt which was around the building where he didn't have any chance to expand. . . . [I]t seems to me that the revised staff easement does the same thing of preserving the area but gives more flexibility and benefit to the developer, so I don't think we're being incompatible."

spondent's] coastal development permit." The factual narrative accompanying the court's decision reflected the trial court's conclusion that the two open-space easements were "intended for different purposes." Specifically, the court found the first easement around the inn was imposed to protect the view from Highway 1; the second easement was imposed to mitigate the visual impact of the road. The court reasoned, "However, the Commission had previously approved use of the road without this easement. Therefore it was unnecessary." The trial court concluded the State Commission had proceeded in excess of jurisdiction and had abused its discretion in requiring "an open-space easement from a landowner whose project, without the easement, already complies with the [Coastal] Act." The court further found the State Commission had abused its discretion, had made a decision not supported by its findings, and had acted unconstitutionally because no burden was imposed on the public which justified imposition of the permit condition. This appeal followed.

Preliminarily, we must determine whether the "substantial evidence" or "independent judgment" test applies to the review of the mandamus judgment herein. ■ If the substantial evidence test applies (as the State Commission contends) the role of the trial court and this court are identical—we must scrutinize the administrative record and determine whether substantial evidence supports the State Commission's findings and whether these findings support its decision. In making these determinations, the reviewing court must resolve reasonable doubts in favor of the State Commission's findings and decision. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 514 [113 Cal.Rptr. 836, 522 P.2d 12]; *Pescosolido* v. *Smith* (1983) 142 Cal.App.3d 964, 970 [191 Cal.Rptr. 415].) If the independent judgment test applies (as respondent contends) the trial court was authorized to exercise its independent judgment on the evidence and this court can overturn its findings only if the evidence received by the trial court, including the administrative record, is insufficient as a matter of law to sustain the *trial court's* findings. (*Whaler's Village Club* v. *California Coastal Com.* (1985) 173 Cal.App.3d 240, 251 [220 Cal.Rptr. 2].) We emphasize the critical distinction—under the substantial evidence test, the appellate court and the trial court perform the identical function of reviewing the administrative record to determine whether the State Commission's decision was supported by substantial evidence. Under the independent judgment test, the appellate court reviews the administrative record to determine whether the *trial court's* findings are supported by substantial evidence. (See *Patterson* v. *Central Coast Regional Com.* (1976) 58 Cal.App.3d 833, 842 [130 Cal.Rptr. 169].)

■ Unless a fundamental vested right is involved, the substantial evidence test is to be applied by both the trial court and the appellate court. (*City of Walnut Creek* v. *County of Contra Costa* (1980) 101 Cal.App.3d 1012, 1016 [162 Cal.Rptr. 224].) ■ Respondent had neither a vested

right to develop his property in a particular fashion nor did he have a vested right to a permit free of conditions; therefore, the trial court should have determined only whether the State Commission's determination was supported by substantial evidence. (Accord, *Whaler's Village Club* v. *California Coastal Com.*, *supra*, 173 Cal.App.3d at pp. 250-251; *Patterson* v. *Central Coast Regional Com.*, *supra*, 58 Cal.App.3d at p. 842; *Davis* v. *California Coastal Zone Conservation Com.* (1976) 57 Cal.App.3d 700, 707-708 [129 Cal.Rptr. 417].) ■ Accordingly, we must determine whether (1) the findings of the State Commission are legally sufficient, and (2) whether the findings are supported by substantial evidence and support the State Commission's decision. (*Markley* v. *City Council* (1982) 131 Cal.App.3d 656, 672-673 [182 Cal.Rptr. 659].) Our inquiry, as was the trial court's, is limited to the record made before the State Commission.[6] (*Franz* v. *Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 142-143 [181 Cal.Rptr. 732, 642 P.2d 792]; *Grupe* v. *California Coastal Com.* (1985) 166 Cal.App.3d 148, 163 [212 Cal.Rptr. 578]; *City of Walnut Creek* v. *County of Contra Costa*, *supra*, 101 Cal.App.3d at p. 1019.)

The commission staff made certain findings which were adopted by the State Commission. (Cal. Admin. Code, tit. 14, § 13092, subd. (d).) Among those findings was a determination that "the previous permit conditions adequately protect the visual resource and can be deleted *only if* there is an *alternative means* of achieving this lost mitigation." (Italics added.) The State Commission found that placing the open-space easement over the northwest slope and imposing a deed restriction requiring State Commission review of any request for future development "will bring the project into conformance with the Coastal Act and are necessary to assure the continued protection of the major visual resource of the Navarro Head area . . . ." There is ample substantial evidence in the record to support these findings.

The administrative record acknowledges that respondent's project will serve visitors, which is designated a "priority" use under the Coastal Act. (Pub. Resources Code, § 30222.) However, this consideration is balanced with a concern that the project be developed in such fashion that the adverse impacts, whether significant or not, be sufficiently mitigated. The importance of preserving the rural character of this highly scenic portion of the Mendocino coast is recognized in Public Resources Code section 30251, which states: "The scenic and visual qualities of coastal areas shall be considered and protected as a resource of public importance. Permitted development shall be sited and designed to protect views to and along the ocean

---

[6]With this elementary rule of mandamus review, we disregard numerous theories advanced by respondent to uphold the trial court's grant of administrative mandate which were *not* advanced below. The painstaking process of narrowing down the asserted issues to those appearing on record at the administrative level was unnecessary and counterproductive to a prompt resolution of this matter.

and scenic coastal areas, to minimize the alteration of natural land forms, [and] to be visually compatible with the character of surrounding areas . . . ." It is self-evident that permit approval to construct an inn, single family residence, dining room, parking lot and access road, no matter how artfully designed, significantly impairs the scenic qualities of this area. The permit proceedings, while obviously cataloging the adverse impacts of each individual component of the project, clearly involved the overriding concern that the project *as a whole* be conditioned to provide scenic protection as required by the Coastal Act.[7] In granting respondent a coastal development permit subject to an open-space easement condition, the Regional Commission attempted to strike a balance between ensuring that sufficient sites be developed to accommodate visitors and making certain that the proposed development "be visually compatible with the character of surrounding areas . . . ." (Pub. Resources Code, § 30251.)

At the hearing before the State Commission on November 18, 1982, respondent presented his theory—adopted by the trial court—that the open-space easement was unnecessary because his project, absent the open-space easement, met the requirements of the Coastal Act. The State Commission rejected this hypothesis. Its refusal to strike the open-space easement condition from respondent's permit was predicated on its finding that the first easement could be removed "only if the adverse visual effects of the project [were] mitigated through" other means. There is substantial evidence in the administrative record supporting this finding, and the State Commission's findings support its conclusion.

■■■ The trial court, while finding the State Commission's imposition of an open-space easement condition an abuse of discretion, also found the action "unconstitutional because no public burden exists as found by the Commission." ■■■ It is generally recognized that "[i]f as a condition to receipt of a permit, the applicant must donate property for a public use that bears no relationship to the benefit conferred on the applicant or the burden imposed on the public, there is a taking of property without payment of just compensation in violation of the United States Constitution." (*Remmenga* v. *California Coastal Com.* (1985) 163 Cal.App.3d 623, 627 [209 Cal.Rptr. 628]; see also *Liberty* v. *California Coastal Com.* (1980) 113 Cal.App.3d 491 [170 Cal.Rptr. 247].) ■■■ However, the record contains no evidentiary support for respondent's claim that the imposition of this open-space easement condition constituted an unconstitutional exercise of the police power.

---

[7]This conclusion is bolstered by comments made at the hearing by the chairman of the State Commission who participated in the original decision to impose an open-space easement condition on respondent's development permit. His "recollection [was] that the open space easement was mitigation not only for the road but for the structure as well on the top of this prominent location." He later reiterated his "recollection that mitigation applied to the project as a whole."

In reviewing the action of the State Commission, we are bound by the reasoning of *Associated Home Builders, etc., Inc.* v. *City of Walnut Creek* (1971) 4 Cal.3d 633 [94 Cal.Rptr. 630, 484 P.2d 606, 43 A.L.R.3d 847]. In *Associated Home Builders* our Supreme Court considered a challenge to a statute which conferred upon cities and counties the power to require dedication of land or payment of fees for park or recreational purposes as a condition of subdivision approval. The purpose of requiring the dedication of land was to preserve open space for the recreational use of residents of the new subdivisions. The primary challenge to the statute was that it deprived a subdivider of property without just compensation. The court upheld the constitutionality of the dedication requirement, finding a constitutionally sufficient nexus between the subdivider who "realizes a profit from governmental approval of a subdivision" and "the influx of new residents [which] will increase the need for park and recreational facilities." (*Id.,* at p. 644.)

The clear weight of authority, relying on *Associated Home Builders,* upholds the constitutionality of development permit conditions similar to those imposed on respondent. The requirement of uncompensated dedication of public access as a condition of approving new coastal development has been consistently upheld as constitutional. (*Whaler's Village Club* v. *California Coastal Com., supra,* 173 Cal.App.3d at pp. 255-262; *Grupe* v. *California Coastal Com., supra,* 166 Cal.App.3d at p. 165; *Georgia-Pacific Corp.* v. *California Coastal Com.* (1982) 132 Cal.App.3d 678, 699 [183 Cal.Rptr. 395].)

 The court in *Sea Ranch Ass'n* v. *California Coastal Com'n.* (N.D. Cal. 1981) 527 F.Supp. 390, vacated because of mootness in 454 U.S. 1070 [70 L.Ed.2d 606, 102 S.Ct. 622], condensed the law in this area: "[The] cases indicate planning bodies may condition development on aesthetic conditions or dedications of property for public recreational facilities or access. The fact that the development has no direct nexus to the condition, that the benefit to the public is greater than to the developer, or that future needs are taken into consideration, does not destroy the validity of the condition. The court is free to look to these factors, as well as the general goals behind the authorizing statute, in evaluating the reasonableness of the regulation." (*Id.,* at p. 395, fn. omitted; see also *Remmenga* v. *California Coastal Com., supra,* 163 Cal.App.3d 623 [upholding the requirement of a payment of $5,000 in lieu of dedication of a right of way to the coast].)

 The open-space easement condition imposed on respondent's building permit is directly related to the disappearance of open land in the coastal region—an exigency to which respondent's project definitely contributes. We therefore conclude that the open-space easement condition imposed in this case was reasonably related to one of the principal objectives of the Coastal Act, which is to preserve the "scenic and visual qualities of coastal

areas," and was supported by the evidence in the record. (Pub. Resources Code, § 30251.)

Respondent presents the unique argument, unsupported by authority, that dedication of the open-space easement binds the hands of future commissions and deprives him, as a property owner, of the right to a hearing on future development. As respondent puts it, "[b]y indelibly recording its opinion about future development in [respondent's] chain of title, the present commission would be able to bind the hands of future commissions which might otherwise have granted a future [development] permit application for [respondent] or his successors." The short and obvious answer to this argument is that the Regional Commission's approval of respondent's project *equally* binds the hands of future commissions which might have been more disposed to preserving Navarro Head in its natural and undeveloped state. The project will permanently alter this site, and the limited protection afforded by the open-space easement should be of similar duration.

█ The judgment is reversed, and the trial court is directed to deny the petition for writ of administrative mandamus.[8]

Low, P. J., and King, J., concurred.

A petition for a rehearing was denied March 14, 1986, and respondent's petition for review by the Supreme Court was denied May 7, 1986. Lucas, J., and Panelli, J., were of the opinion that the petition should be granted.

---

[8]The State Commission urges this court to render an opinion on whether the commission *should have accepted* respondent's offer in the spring of 1983 to deed an open-space easement subject to certain enumerated conditions. The State Commission also makes an argument against respondent's receipt of attorney's fees, *should* the trial court attempt to order them in the future. We decline to discuss the merits of either issue. "An appellate court will not review questions which are moot and which are only of academic importance. It will not undertake to determine abstract questions of law at the request of a party who shows that no substantial rights can be affected by the decision either way." (*Keefer* v. *Keefer* (1939) 31 Cal.App.2d 335, 337 [87 P.2d 856].)