[No. A061045. First Dist., Div. Two. Apr. 18, 1994.]

MITRI SAAD et al., Plaintiffs and Appellants, v.
CITY OF BERKELEY et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to rules 976(b) and 976.1, California Rules of Court, the opinion is certified for publication except for footnote 1 and parts III and IV.

COUNSEL

Katzoff & Riggs, Robert R. Riggs and Ron Bochner for Plaintiffs and Appellants.

Manuela Albuquerque, City Attorney, Thomas S. Brown and Christine S. Daniel, Deputy City Attorneys, for Defendants and Appellants.

OPINION

KLINE, P. J.—

## Introduction

Defendants and appellants the City of Berkeley, its city council and board of adjustments (hereafter collectively the City) denied plaintiffs and appellants Mitri and Sonya Y. Saad (the Saads) a use permit for construction of a large single-family residence on their lot at 25 Del Mar Avenue. The Alameda County Superior Court granted the Saads' petition for writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5 on the ground that one of three findings made by City in support of the permit denial was "inherently ambiguous" and not supported by substantial evidence. The court remanded the matter to the City for reconsideration in light of its ruling. The City appeals from the judgment granting the writ of mandate. The Saads appeal from the judgment insofar as it refuses to compel the City to issue the use permit. We shall reverse the judgment issuing the writ and direct the superior court to deny it.

## Statement of the Case and Facts

The property is located at 25 Del Mar Avenue in the Berkeley Hills and is zoned as R-1 H, which allows single-family residences under strict regulations applicable to the sensitive hill terrain. The front part of the property consists mostly of a flat or gradually sloping area. This area extends approximately 30 to 38 feet northward from the edge of Del Mar Avenue. At the edge of this sloping area is a steep cliff with a sheer drop of approximately 12 feet. Thereafter, the topography slopes downward at a ratio of approximately 1.5 horizontal feet to 1 vertical foot.

In 1987, the former owner of the property, Jacklyn Nevelow, applied for a use permit to build a single-family home on the property. Neighbors opposed the Nevelow application by correspondence and testimony before the City's

board of adjustments and the city council. The city council, on appeal from the board of adjustment's granting of the use permit, remanded the application for review after preparation of an environmental initial study, including an updated soils report. No further action was taken by Nevelow.

The Saads acquired the property in 1989. They applied for a use permit pursuant to the City's zoning ordinance. Their first application (Proposal No. 1) was for a 3,350-square foot, 3-story, structure (including a 450-square foot garage) with a height of 33 feet (28 feet is normally the maximum permitted height under Zoning Ord. § 14.2(a)) and with a 1.5-foot setback (20 feet is the minimum setback under Zoning Ord. § 5A.6.)

Prior to the date set for public hearing on the use permit, the City received many written objections advising the City that the structure, as proposed, would block the views and solar access of neighboring houses, was out of character with the height and bulk of surrounding homes, would create a threat of landslide to homes downhill from the property site, and would generate traffic and drainage problems.

At the March 26, 1990, public hearing on Proposal No. 1, neighbors of the property reiterated their concerns. In light of the controversy, the board referred the matter to mediation between the neighbors and respondents to try to work out a compromise.

Following one mediation session, the Saads submitted revised plans (Proposal No. 2), eliminating one bedroom, reducing the bulk of the structure to 2,920 square feet, and locating the structure 2.5 feet further back from the street. Neighbors again protested that the new proposal did not alleviate any of their objections. A petition from neighbors received by the board stated that the structure would be incompatible with nearby homes, would create traffic and drainage hazards, and would block neighbors' views and solar access. Following the board's denial of a permit for Proposal No. 2 on those grounds, the Saads appealed to the city council.

Before the appeal was heard, the Saads submitted a third proposal (Proposal No. 3), reducing the bulk of the proposed structure to 2,525 square feet, eliminating one story, and reducing the average height of the building to 28 feet. In eliminating the bottom story, however, the Saads proposed that the structure not rest on the ground, but upon piers and crossbeams.

At the October 2, 1990, hearing set for the appeal of the denial of Proposal No. 2, the board did not consider either that proposal or Proposal No. 3. Instead, the city council remanded the matter to the board to allow it to

consider the merits of Proposal No. 3. The hearing on remand for Proposal No. 3 was set for November 8, 1990. The board again received letters and testimony from neighbors expressing concern that Proposal No. 3 was seismically unsafe, created traffic and drainage problems, was out of character in size and bulk with surrounding homes, and would obstruct the views and solar access of surrounding homes. In light of these continuing objections, the board continued the hearing and again referred the proposal to mediation.

Rather than participate in mediation on Proposal No. 3, the Saads submitted a fourth proposed structure (Proposal No. 4) on February 5, 1991. Proposal No. 4 added a third story to the building, increased the gross floor area to 2,620 square feet, and raised the average height of the building by 54 percent to 43 feet. This increase in bulk was accomplished by moving the entire structure 16 feet further back from the street, and 35 feet further down the cliff. In order to build on the face of the cliff, it was proposed the structure be built atop 20-foot piers and supported by crossbeams. The hearing on Proposal No. 4 was held on March 11, 1991. The board again received oral and written testimony regarding the potential hazards and impacts posed by the proposed structure. Evidence was again presented that Proposal No. 4, even more than its predecessors, raised questions as to potential fire hazards, instability, seismic safety, traffic hazards, and adequate drainage. In addition, evidence was presented that the size and mass of the structure were out of character with surrounding homes and that the structure would obstruct the views and solar access of surrounding homes.

The board's discussion reflected its belief that the new proposal had changed little from Proposal No. 3, and had created additional problems. Accordingly, the board denied the use permit application for Proposal No. 4. In support of its decision to deny the application, the board made the following express findings:

"1.   The extreme slope and other characteristics of the site created necessary and logical limitations on the size of the dwelling unit that can be built there. The structure, as proposed by the applicant, is not compatible with the site for the following reasons:

"a.   The structure, as proposed, would have a detrimental effect on views from dwellings to the east of the site.

"b.   The bulk and the massing of the proposed structure on the steep slope would create a towering effect detrimental to the welfare of the residents located down slope of the site.

"2. As designed, the project may not adequately mitigate potential fire and earthquake hazards to neighboring residents and properties."

The Saads appealed to the city council. On July 9, 1991, the city council unanimously upheld the board's denial of the Saads' permit application, and adopted the findings of the board as its own.

On October 4, 1991, the Saads filed a petition for writ of administrative mandamus pursuant to Code of Civil Procedure sections 1094.5 and 1085 requesting that the court direct the City to grant the use permit application. The Saads argued the City's decision was not supported by legally adequate findings and the findings were not supported by substantial evidence.[1]

The court subsequently ruled that the City's first two findings regarding view impairment and the towering effect of the proposed structure were specific, well considered and supported by substantial evidence. The court expressly found that the first two findings complied as a matter of law with *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12] (*Topanga I*). However, the court found also that the third finding that the project "may not adequately mitigate potential fire and earthquake hazards . . ." was "inherently ambiguous and not supported by substantial evidence." Based upon the inadequacy of this single finding, the court granted the petition for writ of administrative mandamus, and remanded the matter for reconsideration by the City. Judgment in favor the Saads was entered on January 4, 1993. The City and the Saads appealed from that judgment.

I.

*Standard of Review*

■ The grant of a land use permit or variance is an adjudicatory act. A proceeding under Code of Civil Procedure section 1094.5 is the exclusive remedy for judicial review of the quasi-adjudicatory administrative action of local level agencies in these circumstances. (*City of Santee* v. *Superior Court* (1991) 228 Cal.App.3d 713, 718, and fn. 2 [279 Cal.Rptr. 22]; Cal. Admin. Mandamus (Cont.Ed.Bar 1989) § 1.4, p. 5.)

■ The parties disagree as to the appropriate scope of review under Code of Civil Procedure section 1094.5 both in the trial court and on this appeal. The Saads argue that the trial court erred in refusing to conduct a de

[1] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *

*See footnote, *ante*, page 1206.

novo review of the City's actions and that we should exercise our independent judgment in reviewing the administrative action. The City contends that both in the trial court and on appeal the proper standard of review is that articulated by the California Supreme Court in *Topanga I*:

"Section 1094.5 clearly contemplates that at minimum, the reviewing court must determine both whether substantial evidence supports the administrative agency's findings and whether the findings support the agency's decision." (11 Cal.3d at pp. 514-515.) "[I]mplicit in section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order. . . . By focusing . . . upon the relationships between evidence and findings and between findings and ultimate action, the Legislature sought to direct the reviewing court's attention to the analytic route the administrative agency traveled from evidence to action." (*Id.*, at p. 515.)

As summarized recently by Division Three of this district, "The scope of our review of the subject administrative agency action in this case is identical with that of the superior court. The same substantial evidence standard applies, and the issue is whether the findings of the [agency] were based on substantial evidence in light of the entire administrative record. [Citations.] Moreover, . . . we must examine the findings made by the [agency] itself to determine whether they were supported by substantial evidence, rather than limiting ourselves to a review of the findings made by the trial court. [Citations.]" (*Desmond* v. *County of Contra Costa* (1993) 21 Cal.App.4th 330, 334-335 [25 Cal.Rptr.2d 842].) The burden is on the petitioner to show there is no substantial evidence whatsoever to support the findings of the board. (*Id.*, at p. 336.)

The Saads contend that the United States Supreme Court in *Nollan* v. *California Coastal Comm'n* (1987) 483 U.S. 825 [97 L.Ed.2d 677, 107 S.Ct. 3141] "casts doubt" upon unanimous California precedents declaring there is no fundamental vested right to build a single-family residence. Seizing upon a footnote in *Nollan*,[2] the Saads advance the argument that denial of permission to construct a single-family home on a residential lot is the type of administrative decision which affects a fundamental vested right and should be subject to the "independent judgment" standard of review. They cite no authority so holding. Both California and federal courts have rejected attempts to stretch *Nollan* beyond "possessory takings" to encompass "regulatory takings." (*Blue Jeans Equities West* v. *City and County of San Francisco*

---

[2] The relevant passage in *Nollan* provides in pertinent part: "But the right to build on one's own property—even though its exercise can be subjected to legitimate permitting requirements—cannot be remotely described as a 'governmental benefit.' " (483 U.S. at p. 834, fn. 2 [97 L.Ed.2d at p. 687].)

(1992) 3 Cal.App.4th 164, 169-171 [4 Cal.Rptr.2d 114] [holding heightened scrutiny test contained in *Nollan* is limited to possessory rather than regulatory takings]; *Lakeview Development* v. *South Lake Tahoe* (9th Cir. 1990) 915 F.2d 1290, 1294 [rejecting claim that *Nollan* suggested landowners have an unconditional right to build any particular project they wish and pointing out that "[t]he sentence quoted from the *Nollan* footnote is qualified by its reference to 'legitimate permitting requirements' "]; *Commercial Builders* v. *Sacramento* (9th Cir. 1991) 941 F.2d 872, 875 [holding *Nollan*'s heightened scrutiny test inapplicable to regulations that do not constitute a physical encroachment on land].)

California cases arising after *Nollan* have consistently reviewed permit determinations such as these using the traditional substantial evidence standard. (*Desmond* v. *County of Contra Costa, supra,* 21 Cal.App.4th 330, 334 [applying substantial evidence standard under § 1094 to review of administrative denial of land use permit]; *Guinnane* v. *San Francisco City Planning Com.* (1989) 209 Cal.App.3d 732, 742, fn. 7 [257 Cal.Rptr. 742] [declining plaintiff's "invitation to exercise our independent judgment" and reiterating that "[t]he proper standard governing our review is the substantial evidence test. (*Paoli* v. *California Coastal Com.* (1986) 178 Cal.App.3d 544, 550-551 . . . .)"].)

We shall review the City's permit denial under the substantial evidence standard.

## II.

*Inadequacy of Single Finding Does Not Undermine Denial of Permit Where Other Adequate Findings Were Made*

Section 20.2 of the City of Berkeley's Zoning Ordinance (No. 3018-NS) provides as follows: "In order to grant any Use Permit the Zoning Officer or Board of Adjustments *shall find* that the establishment, maintenance, or operation of the use or building applied for *will not,* under the circumstances of the particular case existing at the time at which the application is made, *be detrimental* to the health, safety, peace, morals, comfort and general welfare of persons residing or working in the neighborhood of such proposed use or be detrimental or injurious to property and improvements in the neighborhood or to the general welfare of the City." (Italics added.)

This finding of nondetriment is a prerequisite to the grant of a use permit. If the City cannot make the required findings, the permit must be denied. "Because we are reviewing a *denial* of a requested land use permit,

it is not necessary to determine that *each* finding by the Board was supported by substantial evidence. As long as the Board made a finding that any one of the necessary elements enumerated in the ordinance[] was lacking, and this finding was itself supported by substantial evidence, the Board's denial of appellant's application must be upheld." (*Desmond* v. *County of Contra Costa, supra,* 21 Cal.App.4th 330, 336-337, italics in original.)

The Saads counter that if *any* finding by the board is insufficient or not supported by substantial evidence, the trial court must either remand the matter for reconsideration or order the board to issue the permit. This contention is based upon a statement contained in California Administrative Mandamus, *supra,* interpreting *Topanga I.*[3] We do not so read *Topanga I.* In that case the California Supreme Court examined "aspects of the functions served by administrative agencies in the *granting* of zoning variances and of courts in reviewing these proceedings by means of administrative mandamus." (11 Cal.3d at p. 509, italics added.) In *Topanga I* the Supreme Court recognized that "The variance can be sustained only if *all* applicable legislative requirements have been satisfied." (*Id.,* at p. 518, italics in original.) Logically, where the grant of the permit requires satisfaction of each and every statutory requisite, the *denial* of the same permit may be sustained where a single statutory requirement is not met. (See *Desmond* v. *County of Contra Costa, supra,* 21 Cal.App.4th 330, 337.)

In *Topanga I,* the California Supreme Court announced that the findings requirement of Code of Civil Procedure section 1094.5 was real and that the reviewing courts should no longer imply findings to support the administrative determination where such findings were not made. (11 Cal.3d at p. 515.) Nor do findings which merely track the language of the statute suffice to bridge the analytic gap between the evidence and the decision. (*Id.,* at p. 517, fn. 16.)

Here, there is no need to *infer* findings to support denial of the use permit. The City made three specific findings in support of its conclusion that granting the Saads' application for a use permit would be *detrimental* to

---

[3]"Formerly, uncertain or ambiguous findings would be disregarded as long as there was one sufficiently clear finding supporting the decision [citation], but after the decision in *Topanga Ass'n for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, . . . this no longer appears to be the case. When an administrative agency's findings are ambiguous or uncertain, the proper course is now for the trial court to remand the matter to the agency for additional or clarifying findings. [Citing *Los Alamitos Gen. Hosp.* v. *Lackner* (1978) 86 Cal.App.3d 417, 425 (149 Cal.Rptr. 98).]" (Cal. Admin. Mandamus, *supra,* § 4.103, pp. 160-161.)

neighbors under the ordinance.. Nor did the City's findings merely track the general language of the statute..

Under general principles of appellate review and the specific language of Code of Civil Procedure section 1094.5, the Saads must show a prejudicial abuse of discretion to prevail. If any one of the findings made by the City is supported by substantial evidence and warrants denial of the permit under the ordinance, defects in other findings by the City will not prejudice the Saads. The City could simply eliminate the other findings and still prevail upon the one adequate finding of detriment. Unless the findings are so intertwined that a failure of one could reasonably lead the City to reconsider its denial of the permit, the Saads cannot establish prejudice.

This view finds support not only in the language of Code of Civil Procedure section 1094.5, which requires that any abuse of discretion by the administrative body be "prejudicial,"[4] but also in Government Code section 65010, subdivision (b)[5] which requires prejudice, defined as substantial injury to the applicant plus probability of a different result, for procedural errors in zoning and planning matters to warrant overturning the decision of the administrative agency. (See *Lucas Valley Homeowners Assn. v. County of Marin* (1991) 233 Cal.App.3d 130, 147 [284 Cal.Rptr. 427].)

*Los Alamitos Gen. Hosp., Inc.* v. *Lackner* (1978) 86 Cal.App.3d 417 [149 Cal.Rptr. 98], the authority relied upon by California Administrative Mandamus, *supra*, does not contradict these well established principles of review. In *Los Alamitos*, a hospital sought review in administrative mandamus of a Department of Health decision denying its application for a permit exemption for acquisition of a new piece of equipment (an EMI full-body

---

[4] "(b) The inquiry in such a case shall extend to the questions whether the respondent has proceeded without or in excess of jurisdiction; whether there was a fair trial; and whether there was any *prejudicial abuse of discretion.* Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b), italics added.)

[5] "*No action, inaction or recommendation by any public agency* or its legislative body *or any of its administrative agencies* or officials on any matter subject to this title *shall be held invalid or set aside by any court on the ground* of the improper admission or rejection of evidence or by reason *of any error,* irregularity, informality, neglect, or omission (hereafter, error) *as to any matter pertaining to* petitions, *applications,* notices, *findings,* records, hearings, reports, recommendations, appeals, or any matters of procedure subject to this title, *unless the court finds that the error was prejudicial* and that the party complaining or appealing suffered substantial injury from that error and that a different result would have been probable if the error had not occurred. There shall be no presumption that error is prejudicial or that injury was done if the error is shown." (Gov. Code, § 65010, subd. (b), italics added.)

scanner) under Health and Safety Code section 437.10 (expansion permit for projects commenced after the statute's effective date). The agency had found that the acquisition project was commenced after the effective date of the statute, notwithstanding the hospital's contention that the equipment was a component part of an existing project. In so determining, the Department of Health "severed" the full-body scanner from the remainder of the application for exemption. The department found that, " 'The project was for the acquisition of an EMI Full Body Scanner' and then [found] that the project as so defined was not commenced within the period required for the 'grandfather' exemption." (86 Cal.App.3d p. 425.) The reviewing court could not determine from the findings made whether the acquisition of the full-body scanner had been determined to be not part of the original project, but an afterthought (in which case the permit was properly denied) or whether the Department erroneously treated the component parts of the project as individually reviewable. (*Ibid.*) Because the findings as a whole were unclear and did not reveal which of the two different approaches the department had based its denial upon and because one approach would support denial and the other would not, the appellate court remanded to the department for further findings on the issue of whether the project for which exemption was sought included the full-body scanner. (*Id.*, at p. 426.)

Unlike *Los Alamitos*, where the findings were so unclear that they did not disclose which of the two approaches the department had adopted, the City in this case clearly made three independent findings supporting denial of the permit. A flaw in any one would not undermine the other two. Under the ordinance, if any one of the three findings was sufficient and supported by substantial evidence, denial of the permit was required.[6]

Because we determine that the findings regarding views and towering effect are adequate and supported by substantial evidence, we need not consider the adequacy or clarity of the remaining findings as to slope instability and fire danger.

### III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

[6]We note that policy considerations also support our following *Desmond* v. *County of Contra Costa, supra,* 21 Cal.App.4th 330 in holding that a single adequate finding will support the City's permit denial. If all findings made in circumstances such as these must be "rock solid" before an administrative *denial* of a use permit or variance is upheld, the agency will have a strong incentive to limit findings to those which are most likely to prove unassailable and to provide less information to petitioners and to the public as to the reasons underlying the agency's actions.

*See footnote, *ante*, page 1206.

We reverse the judgment granting the writ of administrative mandate and remanding the matter to the City. The superior court is directed to deny the writ. Each party shall bear its own costs on appeal.

Smith, J., and Phelan, J., concurred.

The petition of plaintiffs and appellants for review by the Supreme Court was denied July 14, 1994.