[No. A061659. First Dist., Div. Five. Apr. 25, 1994.]

SURFRIDER FOUNDATION, Plaintiff and Appellant, v.
CALIFORNIA COASTAL COMMISSION, Defenndant and Respondent.

**COUNSEL**

Mark A. Massara and Susan Brandt-Hawley for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Jan S. Stevens and Joseph B. Barbieri, Deputy Attorneys General, for Defendant and Respondent.

## Opinion

### KING, J.—

### I. Introduction

Surfrider Foundation appeals from a judgment denying a petition for a writ of mandate, challenging the California Coastal Commission's (Commission) approval of applications by the California Department of Parks and Recreation (Department) for permits to install devices for the collection of parking fees at 16 state park beaches. Surfrider contends the Commission violated both the California Environmental Quality Act (CEQA) and the California Coastal Act. The primary issues are whether the Commission's action was exempt from CEQA and whether the installation of the parking fee devices is inconsistent with the public access and recreational policies of the Coastal Act.

### II. Background

In 1990, the Legislature imposed a $16 million budget cut on the Department and directed it to increase its user fees to compensate for the shortfall. The Department decided to raise existing parking fees and impose new fees at various locations throughout the state park system, some of which are in the coastal zone. The Department filed notice that the collection of the fees was exempt from CEQA pursuant to an exemption for fees charged by a public agency for the purpose of meeting operating expenses. (Pub. Resources Code, § 21080, subd. (b)(8); Cal. Code Regs., tit. 14, § 15273, subd. (a).)

The Department decided to install two types of devices to collect the fees: an "iron ranger" in which the user places money in an envelope corresponding to a parking space and deposits the envelope into the device, and a "Park-Ur-Self" automated ticket machine. The Department filed notice that installation of the devices was exempt from CEQA pursuant to an exemption for construction of small structures. (Cal. Code Regs., tit. 14, § 15303.)

The Department then submitted permit applications to the Commission for the installation of the parking fee devices at 16 state park beaches. (Fees were already being charged at seven of these beaches.) The Coastal Act requires a permit for any "development" in the coastal zone. (Pub. Resources Code, § 30600.) Development includes "the placement or erection of any solid material or structure." (Pub. Resources Code, § 30106.)

The parking fee scheme generated considerable public opposition. After a protracted period of multiple Commission hearings, denial of the permits, an

episode of legislative intervention,[1] and resubmission of the permit applications, the Commission approved them in three separate groups and adopted supporting written findings.

Surfrider challenged the permit approvals by petition for a writ of mandate, naming the Commission as respondent and the Department as real party in interest. Surfrider contended, among other things, that the Commission had erred in determining that the installation of the devices was exempt from CEQA and is inconsistent with the public access and recreational policies of the Coastal Act. The City of Fort Bragg intervened on behalf of Surfrider.

The court denied the petition, ruling, among other things, that the Department's imposition of parking fees was exempt from CEQA, the Commission's approval of the device installations was exempt from CEQA, and the Commission's finding of consistency with the public access and recreational policies of the Coastal Act was supported by substantial evidence. On the subject of public access and recreational policies, the court's written decision cited statistics provided by the Department "showing that when fees are imposed or increased at state parks, a short-term reduction in park use occurs followed by a return to previous park use levels."

Surfrider and the City of Fort Bragg (hereafter Surfrider) filed a timely notice of appeal from the judgment denying the petition.

### III. Discussion

#### A. *CEQA*

■ Surfrider first challenges the determinations below that the imposition of parking fees and the installation of the fee collection devices were exempt from CEQA.

We begin by pointing out that only the propriety of the Commission's approval of the permit applications is before us. The Department's underlying exemption determinations had to be challenged within 35 days after the notices of exemption were filed. (Pub. Resources Code, § 21167, subd. (d).) That did not occur. Thus, the propriety of the Department's action is not subject to review. Indeed, Surfrider concedes in its opening brief that the Department's decision to raise fees was exempt from CEQA.

The Commission's action was exempt from CEQA due to the combined application of two types of exemptions. First, CEQA prescribes a statutory

---

[1]According to a Commission staff report, "it was made clear" to the Commission by members of the Senate and Assembly budget committees that if the Commission did not quickly take steps to implement the imposition of fees, the Department might be forced to close some coastal parks and the Commission's own budget might be reduced.

exemption for the "approval" of fees charged by public agencies for the purpose of meeting operating expenses. (Pub. Resources Code, § 21080, subd. (b)(8); Cal. Code Regs., tit. 14, § 15273, subd. (a); see *Condit* v. *Solvang Mun. Improvement Dist.* (1983) 146 Cal.App.3d 997, 1001 [194 Cal.Rptr. 683].) It is perhaps debatable whether the Commission's approval of the device installations included approval of the Department's underlying decision to impose fees, but if it did, the fee exemption clearly applied.

Second, there is a "categorical" exemption from CEQA for construction of small structures. (Cal. Code Regs., tit. 14, § 15303; Pub. Resources Code, § 21084, subd. (a).) It is undisputed that the fee collection devices are small structures within the meaning of this exemption.

Categorical exemptions are subject to an exception: they will not apply "where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances." (Cal. Code Regs., tit. 14, § 15300.2, subd. (c).) Surfrider argues this exception is invoked here because the imposition of parking fees will cause people to park outside parking lots and create alternative beach access routes, with resulting adverse environmental impacts. Surfrider is confusing apples with oranges. Any such causal effect would not be from the construction of the small structures at issue here—the fee collection devices—but from the underlying imposition of the fees, which is statutorily exempt from CEQA without regard to the categorical exemption exception.

Surfrider also argues there has been improper "segmentation" for purposes of CEQA avoidance, relying on the proposition that "environmental considerations do not become submerged by chopping a large project into ·many little ones—each with a minimal potential impact on the environment—which cumulatively may have disastrous consequences." (*Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263, 283-284 [118 Cal.Rptr. 249, 529 P.2d 1017].) That is not what has occurred here. The collection of parking fees has not been segmented into 16 component parts (one for each location) for the purpose of ignoring cumulative environmental impact. Rather, it is the combined effect of two types of CEQA exemptions which places the collection of fees as a whole outside the purview of CEQA.

■ Surfrider's final CEQA argument is that the Commission's permit process did not supply adequate documentation in lieu of an environmental impact report (EIR). (Pub. Resources Code, § 21080.5, subd. (a).) But this obligation of a state regulatory commission applies only when an EIR would otherwise be required by CEQA. (*Ibid.*) As the exemption provisions of CEQA made an EIR unnecessary in the present case, such documentation was not required.

## B. *The Coastal Act*

■ Surfrider also contends the Commission violated the Coastal Act in approving the Department's permit applications because the installation of the parking fee collection devices is inconsistent with the Coastal Act's public access and recreational policies.

The California Constitution ensures that "access to the navigable waters of this State shall be always attainable for the people thereof." (Cal. Const., art. X, § 4.) The Coastal Act states that in carrying out this constitutional requirement, "maximum access . . . and recreational opportunities shall be provided for all the people consistent with public safety needs and the need to protect public rights, rights of private property owners, and natural resource areas from overuse." (Pub. Resources Code, § 30210.) The Coastal Act further provides, "Development shall not interfere with the public's right of access to the sea where acquired through use or legislative authorization, including, but not limited to, the use of dry sand and rocky coastal beaches to the first line of terrestrial vegetation." (Pub. Resources Code, § 30211.) Every coastal development permit issued by the Commission for development between the nearest public road and the sea must include a specific finding that the development is in conformity with the Coastal Act's public access and recreation policies. (Pub. Resources Code, § 30604, subd. (c).)

Surfrider argues the imposition of beach parking fees is inconsistent with these policies because it will prevent people from using state park beach facilities or cause them to seek alternative access routes. The result, claims Surfrider, will be interference with the Coastal Act's further policies of protecting lower cost visitor and recreational facilities (Pub. Resources Code, § 30213), protecting water-oriented recreational activities (Pub. Resources Code, § 30220), protecting marine resources (Pub. Resources Code, §§ 30230-30231), and protecting scenic quality (Pub. Resources Code, § 30251).

Preliminarily, we consider the scope of the Coastal Act's public access and recreational policies. Strictly speaking, the Commission did not approve the imposition of fees, but merely the installation of fee collection devices. Viewed simply as small structures, those devices will not physically impede coastal access. It is the fact that one must deposit money into them that underlies Surfrider's claims of impeded access. Is this type of indirect effect within the scope of the act's policies? We believe so.

A primary focus of the public access and recreational policies is the direct physical impedance of access. The California Coastal Plan of 1975, which was mandated by the coastal initiative of 1972 and was the Legislature's

guide for drafting the 1976 Coastal Act (*Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 162-163 [188 Cal.Rptr. 104, 655 P.2d 306]), warned that "much access to the shoreline has been lost by the erection of fences, buildings, and other structures" and that "homes, business, and industries have often cut off existing public access to the coastline." (Cal. Coastal Zone Conservation Com., Cal. Coastal Plan (1975) p. 152.) But the 1975 plan also warned of indirect or nonphysical impediments to access, including reduction of road capacity and off-street parking, unavailability of low-cost housing and tourist facilities, and proliferation of expensive recreational facilities. (*Id.* at pp. 152-153.) Thus, the concerns placed before the Legislature in 1976 were more broad-based than direct physical impedance of access. For this reason, we conclude the public access and recreational policies of the Coastal Act should be broadly construed to encompass *all* impediments to access, whether direct or indirect, physical or nonphysical.

The Commission, however, made findings of consistency with these policies. We must affirm the judgment if the Commission's decision is supported by substantial evidence. (*Paoli* v. *California Coastal Com.* (1986) 178 Cal.App.3d 544, 550-551 [223 Cal.Rptr. 792].) It is. The Department presented the Commission with statistics demonstrating that state park vehicle fee increases in 1987 had had little or no effect on attendance: the number of paid vehicles dropped only slightly (3,999,546 in 1985-1986, 3,883,208 in 1986-1987, and 3,821,001 in 1987-1988) and then rebounded (3,860,284 in 1988-1989 and 3,922,134 in 1989-1990). From this evidence the Commission concluded, "Department experience has been that usage historically falls temporarily following such fee changes, but then returns to previous levels." The Department's statistics support the Commission's conclusion.

The Department further presented evidence of minimal impact on seniors, low-income users, and frequent users: seniors may purchase an annual parking pass for $20, low-income users may purchase an annual parking pass for $5, and anyone may purchase an annual pass for $75.

Thus, the evidence completely undermines the premise underlying Surfrider's access arguments—that the challenged fees will prevent people from using state park beaches. There was substantial evidence of (1) past experience to the contrary, and (2) measures in place to provide low-cost access where needed. Because of that evidence, we cannot disturb the judgment.[2]

In an ideal world, people should not have to pay a fee to enjoy the coast. But we do not live in an ideal world. Most of us can only get to state park

---

[2]Surfrider also contends the Commission fell short of its statutory mandate to consider innovative access management and funding techniques. (Pub. Resources Code, §§ 30214,

beaches in automobiles, which must be parked. At those beaches there must be parking lots, restrooms, trash receptacles and the like, which cost money to maintain. Like so many other public agencies, the Department has suffered budget cuts. Sources of additional funding must be found, or some state park beaches might have to be closed, precipitating a genuine access problem. The Department has looked to parking fees for additional funding. That is an unpleasant fact of life in California in the 1990's. It is not a violation of CEQA or the Coastal Act.

### C. *The Commission's Findings*

■ Finally, Surfrider challenges the adequacy of the Commission's written findings on consistency with the act's policies (Cal. Code Regs., tit. 14, § 13096), claiming the findings ignored the purported impacts of parking fees on public access. Not so. The findings acknowledged the claimed potential for creation of alternative access routes, cited the statistical evidence of minimal impact on attendance resulting from prior parking fee increases, described the Department's measures for providing low-cost annual parking passes to disadvantaged and frequent users, and noted the Department's intent to implement a program to monitor any adverse environmental impacts, before concluding with the finding of consistency. The findings did not ignore the access issue, but addressed it in considerable detail. In that respect they were more than adequate.

### IV. DISPOSITION

The judgment is affirmed.

Peterson, P. J., and Haning, J., concurred.

A petition for a rehearing was denied May 20, 1994, and appellant's petition for review by the Supreme Court was denied July 13, 1994.

---

subd. (c), 30531, subd. (c).) The record demonstrates otherwise; the Commission held numerous meetings at which it received and considered suggestions by members of the public regarding appropriate fee schedules and funding alternatives.