[No. D024838. Fourth Dist., Div. One. Dec. 15, 1998.]

BRENERIC ASSOCIATES et al., Plaintiffs and Appellants, v. CITY OF DEL MAR, Defendant and Respondent.

**COUNSEL**

Joseph S. Carmellino for Plaintiffs and Appellants.

Mark A. Potter for Defendant and Respondent.

James S. Burling and Stephen E. Abraham for Pacific Legal Foundation as Amicus Curiae.

Ruth Sorensen for California State Association of Counties as Amicus Curiae.

**OPINION**

**McDONALD, J.**—Breneric Associates and Stephen Scola (together Breneric) applied to the City of Del Mar (Del Mar) for a permit to build a

two-story addition to an existing single-family residence (the residence). A condition to obtaining the permit was approval of the project's design and issuance of a design review permit by Del Mar's design review board (DRB). The DRB found that Breneric's proposed design was inconsistent with the residence's architectural style and was inharmonious with the surrounding neighborhood and denied Breneric's application for a design review permit. Del Mar's city council upheld the DRB ruling.

Breneric filed a lawsuit against Del Mar, seeking (1) a writ of administrative mandate to compel Del Mar to issue the design review permit, and (2) damages under 42 United States Code section 1983 (section 1983). The trial court sustained Del Mar's demurrer to the section 1983 claim without leave to amend and dismissed that claim. However, the trial court granted Breneric's petition for a writ of mandate, finding there was insufficient evidence to support denial of the permit. Breneric argues the ruling on his section 1983 claim was error, and by cross-appeal Del Mar argues granting the writ of mandate was error.

We conclude the trial court correctly sustained the demurrer to Breneric's section 1983 claim but erred by granting the writ of mandate.

I

*Factual and Procedural Background*

A. *The Del Mar Ordinances*

Chapter 23.08 of the Del Mar Municipal Code[1] provides that a person must obtain a design review permit as a condition to obtaining a building permit for certain types of remodeling projects. (§ 23.08.020-A.) The purpose of design review is to protect the aesthetic quality of the community "by fostering and encouraging good design which encompasses the use of harmonious materials and colors [and] compatible proportional relationships." (§ 23.08.010.)

The design review permit may be denied if the DRB makes findings of fact, based on information presented at the hearing on the application, supporting one or more of the regulatory conclusions specified by the ordinance. (§ 23.08.070.) Section 23.08.077, titled "Regulatory Conclusions - Relationship to Neighborhood," authorizes the DRB to deny a design review permit if "[t]he design is not harmonious with . . . the surrounding

---

[1] All further statutory references, other than to section 1983, are to the Del Mar Municipal Code unless otherwise specified.

neighborhood in one or more of the following respects: [¶] . . . [¶] . . . [s]tructural siting on the lot." (§ 23.08.077-D.2.) Section 23.08.078, titled "Regulatory Conclusions - Building Design," authorizes the DRB to deny a design review permit if "[t]he proposed development fails to coordinate the components of exterior building design on all elevations with regard to color, materials, architectural form and detailing to achieve design harmony and continuity." (§ 23.08.078-A.) The residence had been built in 1884 and retained its architecturally historic character.

Breneric filed an application for a design review permit to demolish an existing bedroom at the rear of the residence, construct a new two-story addition on the western side of the residence and make other exterior improvements. In April 1993 the DRB discussed the application and noted · that the proposed use of glass panels on the roof deck was inappropriate and inconsistent with the architectural style of the existing structure. It also noted that the proposed siting of the two-story addition on the lot created a crowded structural condition inharmonious with the surrounding neighborhood. The DRB denied the application based on sections 23.08.077-D.2 and 23.08.078-A.

Breneric appealed the DRB ruling to Del Mar's city council. At the July 1993 hearing on the appeal, it appeared there were sufficient votes to uphold the DRB ruling. Breneric elected to accept a vote remanding the proposal to the DRB for consideration of design changes that would eliminate the DRB's objections.

Breneric submitted to the DRB a slightly modified proposal, but the use of glass panels on the deck and the siting of the addition were unchanged from the initial proposal. In January 1994 the DRB again denied Breneric's application, concluding (1) the design of the roof deck and associated glass panels was inconsistent with the design of the existing structure, and (2) the siting of the addition would result in a structure covering almost the entire width of the lot, making it inharmonious with the surrounding neighborhood.

Breneric again appealed to Del Mar's city council. Although the DRB cited both the design issue and the siting issue in the January 1994 denial of the design review permit, the principal discussion at the February 1994 city council hearing was whether the proposed siting of the two-story addition was acceptable.[2] The city council held a lengthy hearing during which it evaluated the objections to and problems created by the proposed siting. The

---

[2]The siting issue was the focus of the city council hearing because Breneric had previously agreed to change the design of the deck from glass to "fretwork of the period" if the siting of the proposed addition was approved.

city council voted to deny Breneric's application and uphold the DRB's denial of the design review permit, citing as grounds for rejecting the proposed design both the use of glass for the roof deck (§ 23.08.078-A) and the siting of the addition (§ 23.08.077-D).

## B. *The Lawsuit*

Breneric's lawsuit against Del Mar stated two causes of action. The section 1983 claim alleged that an unnamed majority of members of the DRB and the city council were hostile to Scola and acted with the intent to prevent Breneric from development activity in Del Mar and by manipulating the Del Mar ordinances to deny them any economically viable use of the property. Breneric alleged the vote to deny the application was based not on the merits of the application but on hostility toward Scola. Breneric alleged that Del Mar acted under color of state authority, and denial of the application deprived Breneric of substantive due process and equal protection and was a "taking" of property. Breneric could therefore recover damages under section 1983. The trial court sustained Del Mar's demurrer to the section 1983 cause of action without leave to amend. Breneric appeals this ruling.

The lawsuit also sought a writ of administrative mandate to compel Del Mar to issue the design review permit. The trial court concluded there was insufficient evidence in the administrative record to support the finding that the use of the glass panels in the design of the roof deck justified denial of the design review permit under section 23.08.078-A. The trial court also concluded there was insufficient evidence in the administrative record to support the finding that the siting of the proposed addition justified denial of the design review permit under section 23.08.077-D. Del Mar's cross-appeal contends that because substantial evidence supports both findings, the trial court erred by granting the writ of administrative mandate.

## II

### *Del Mar's Cross-appeal*

## A. *Standard of Review*

We initially determine the standard of judicial review of an agency's denial of a discretionary design review permit. Del Mar argues the proper standard of review is the deferential substantial evidence test summarized in *Saad* v. *City of Berkeley* (1994) 24 Cal.App.4th 1206 [30 Cal.Rptr.2d 95]. Under this standard, the appellate court is not bound by the trial court's determinations but instead conducts a de novo examination of the administrative record to assess whether there is substantial evidence to support the

administrative agency's findings and whether the findings support the agency's decision. The burden is on the petitioner to show there is insufficient evidence to support the agency's findings. (*Id.* at p. 1212.) Under this standard of review, we resolve all reasonable doubts in favor of the administrative findings and decision and reverse the administrative determination only if, based on the evidence before the agency, a reasonable person could not have reached the conclusion reached by the agency. (*Harris* v. *City of Costa Mesa* (1994) 25 Cal.App.4th 963, 969 [31 Cal.Rptr.2d 1].)

Breneric's appellate briefs are silent on the proper standard of review. However, Pacific Legal Foundation (PLF), in its amicus curiae brief filed on behalf of Breneric, suggests that because denial of a permit deprives the landowner of the right to reasonably use his property the proper standard of review is a form of "heightened scrutiny" enunciated by *Nollan* v. *California Coastal Comm'n* (1987) 483 U.S. 825 [107 S.Ct. 3141, 97 L.Ed.2d 677] (*Nollan*) and *Dolan* v. *City of Tigard* (1994) 512 U.S. 374 [114 S.Ct. 2309, 129 L.Ed.2d 304] (*Dolan*). PLF argues the test is not whether there is evidence from which the agency could rationally have decided that denial of the permit might achieve the governmental objective, but whether the agency has produced evidence demonstrating that the denial of the permit in fact substantially advanced the legitimate state interest sought to be achieved. (*Nollan, supra,* 483 U.S. at p. 834, fn. 3 [107 S.Ct. at p. 3147].) PLF argues that Del Mar must show there is a logical connection between the denial of the permit and the governmental objective to be achieved, and must further make a determination that the conditions imposed on the applicant are roughly proportional to the nature and effect of the proposed development. (*Ehrlich* v. *City of Culver City* (1996) 12 Cal.4th 854, 877-881 [50 Cal.Rptr.2d 242, 911 P.2d 429] [summarizing the *Nollan-Dolan* takings analysis].)

We are unconvinced the so-called heightened scrutiny test is applicable here. The heightened scrutiny test has been reserved for cases in which the landowner's ability to obtain a discretionary permit for a land use was conditioned on the landowner's agreement either to convey land (a taking) or to pay some monetary exaction not related to the effect of his proposed use. (*Landgate, Inc.* v. *California Coastal Com.* (1998) 17 Cal.4th 1006, 1022-1023 [73 Cal.Rptr.2d 841, 953 P.2d 1188].) However, Breneric was not required to convey land or pay a monetary exaction to obtain a permit; instead, the permit was denied because the proposed design was aesthetically objectionable. The *Ehrlich* court explained that the heightened scrutiny test set forth in the *Nollan-Dolan* takings analysis is not applicable to: ". . . traditional land-use regulations imposing minimum building setbacks, parking and lighting conditions, landscaping requirements, and other *design*

conditions such as color schemes, building materials and architectural amenities. Such aesthetic conditions have long been held to be valid exercises of the city's traditional police power, and do not amount to a taking merely because they might incidentally restrict a use, diminish the value, or impose a cost in connection with the property." (*Ehrlich* v. *City of Culver City, supra,* 12 Cal.4th at p. 886, original italics.)

Because our review of governmental conditions on development is deferential when the conditions are simply restrictions on proposed land use and do not impose requirements for either conveyances of land or monetary exactions, an agency's denial of a discretionary land use permit will be upheld as long as the denial substantially advances legitimate governmental interests and is supported by substantial evidence. (*Landgate, Inc.* v. *California Coastal Com., supra,* 17 Cal.4th at p. 1023; see also *Saad* v. *City of Berkeley, supra,* 24 Cal.App.4th at pp. 1212-1213 [rejecting application of *Nollan* to denial of permit based on aesthetic considerations].)

B. *Substantial Evidence Supports Del Mar's Decision to Deny the Application*

▋ The purpose of the Del Mar Municipal Code design review ordinance is to protect the aesthetic quality of the community "by fostering and encouraging good design which encompasses the use of harmonious materials and colors [and] compatible proportional relationships." (§ 23.08.010.) Regulating development to promote and preserve the scenic and aesthetic character of the community is a substantial and legitimate governmental interest, and a city may reject proposed developments if it determines the project would detract from this interest. (*Guinnane* v. *San Francisco City Planning Com.* (1989) 209 Cal.App.3d 732, 741-742 [257 Cal.Rptr. 742]; *Desmond* v. *County of Contra Costra* (1993) 21 Cal.App.4th 330, 337-338 [25 Cal.Rptr.2d 842].)

Del Mar rejected Breneric's proposed development based on two findings and conclusions. If either finding is supported by substantial evidence, the agency's rejection of the proposed development must be upheld. (*Saad* v. *City of Berkeley, supra,* 24 Cal.App.4th at pp. 1213-1215.) We examine the administrative record to determine whether there is substantial evidence to support either of the findings and conclusions upon which Del Mar relied to deny a design review permit for Breneric's proposed project.[3] ▋ The courts have repeatedly held that a determination of a project's aesthetic

---

[3]Although we have examined the administrative record to determine the presence or absence of the requisite substantial evidence, we note that there is a presumption the agency regularly performed its official duty and that the findings and actions of the administrative

incompatibility with the neighborhood does not require expert testimony and that the opinions and objections of neighbors can provide substantial evidence to support rejection of a proposed development. (*Harris* v. *City of Costa Mesa, supra,* 25 Cal.App.4th at p. 973; *Dore* v. *County of Ventura* (1994) 23 Cal.App.4th 320, 330 [28 Cal.Rptr.2d 299].) The opinions of administrative board members, when based on personal observations of the neighborhood and the proposed development, can also provide evidentiary support for a determination of aesthetic incompatibility of a project. (*Desmond* v. *County of Contra Costa, supra,* 21 Cal.App.4th at p. 339.)

### 1. *The Siting Issue*

Del Mar found under section 23.08.077-D.2 that because of the proposed siting of the addition, Breneric's design was inharmonious with the surrounding neighborhood. The existing residence abutted the eastern property line with no sideyard setback along the eastern side. Breneric's design proposed to append a two-story structure onto the western side of the existing residence, leaving the minimum five-foot sideyard setback between the addition and the western property line. The design resulted in a structure stretching across all but five feet of the width of a fifty-foot-wide lot. Del Mar's finding that the siting of the addition would "result in a structure which covers almost the entire width of the lot" is supported by substantial evidence.

Del Mar also found the resulting structure would have been inharmonious with the surrounding neighborhood. Breneric argues there was no evidence to support this conclusion. However, the testimony presented to the city council at the July 1993 hearing on the proposal included the following testimony of a neighbor who lived one block from the project: "That new addition will not be invisible from the street, and in fact will have a great impact upon the neighborhood. . . . [T]he east side of this project will be right on the property line. As we move to the right, we realize that on the

agency were supported by substantial evidence, which places on Breneric the burden of proving the agency's decision was invalid as lacking substantial evidence to support the findings. (*Desmond* v. *County of Contra Costa, supra,* 21 Cal.App.4th 330, 335-336.) Here, Breneric has devoted less than one page of its appellate brief to this question, arguing that the glass-paneled roof deck problem was not an issue the city council could consider at the February 1994 hearing, and that there is no support for the neighborhood incompatibility determination because there was no evidence of how other houses in the neighborhood were sited on their lots. Although Breneric's desultory showing on appeal appears to fall short of satisfying the burden of overcoming the presumption that the findings and actions of Del Mar were supported by substantial evidence, which alone would permit us to affirm the action (*Planned Parenthood Assn.* v. *Operation Rescue* (1996) 50 Cal.App.4th 290, 305 [57 Cal.Rptr.2d 736]), we nevertheless reach the argument. (*Fortman* v. *Hemco, Inc.* (1989) 211 Cal.App.3d 241, 256 [259 Cal.Rptr. 311].)

right[-] hand side there will be only five feet of setback . . . . We end up with . . . a wall-to-wall house, which gives a very crowded impression. *If you look at the other houses on 10th Street, there are at least five feet on both sides and maybe some more.* It seems this house takes, almost forms a wall across the front of the lot." (Italics added.)

A wall-to-wall structure's incompatibility with the neighborhood was noted at the February 1994 city council hearing when the neighbor explained that: "[The structure gives] the appearance of a wall that goes right across and kind of *blocks the open feeling that we are so use[d] to on this street. If you walk up and down the street you notice that [other] houses generally have space on either side, and gives a very open feeling.* Well in this case, I think we are losing that open feeling by placing the unit on the side there." (Italics added.)

Another neighbor commented that 20 of the 36 homes on 10th Street were single-story homes, and of the 16 homes with a second story all but 4 had placed the second story at the rear of the lot. The neighbor therefore argued Breneric's two-story addition should be resited from the side yard to the rear of the existing structure.[4] Finally, members of the DRB commented that the structure seemed cramped on the site, and the house, as proposed, seemed to go from property line to property line, giving the effect of blocking off the lot.

The testimony of the neighbors and the opinions of the DRB members constitute substantial evidence to support the finding that Breneric's proposed development was inharmonious with the surrounding neighborhood. (*Desmond* v. *County of Contra Costa, supra,* 21 Cal.App.4th at p. 339.) Because a reasonable person could have reached the conclusion reached by Del Mar, we affirm the discretionary determination made by Del Mar. (*Harris* v. *City of Costa Mesa, supra,* 25 Cal.App.4th at p. 969.)

2. *The Glass Panel Issue*

Although the finding on the siting issue alone is sufficient to affirm Del Mar's denial of the design review permit (*Saad* v. *City of Berkeley, supra,* 24 Cal.App.4th at pp. 1213-1215), the finding on the glass panel design issue is also supported by substantial evidence.[5] Del Mar found under section 23.08.078-A that Breneric's design did not coordinate the exterior building

---

[4]Breneric's own architect recognized that the proposed plan created "a 'spread' to the house across the lot" and conceded that siting the addition to the rear was "not inappropriate" and was "acceptable on the site."

[5]On appeal, Breneric claims Del Mar cannot rely on the incompatibility of the design elements because that issue had been resolved and was not considered either by the DRB in its January 1994 denial of his application or by the city council in its February 1994 vote to

design with the color, materials, architectural form and detailing of the existing structure to achieve design harmony and continuity; the glass-paneled roof deck was not consistent with the architectural style of the existing structure.

An architect testified the existing structure was a unique example of a Victorian cottage. The appropriateness of using glass panels around the roof deck was questioned in numerous DRB staff reports, and at least three DRB members opined that the use of glass panels was incompatible with the architectural style of the existing structure. There was substantial evidence to support the finding that a glass-paneled deck would be incompatible with the architectural style of the existing structure.

## C. *Conclusion*

Del Mar's findings are supported by substantial evidence and provide an adequate basis for denying the design review permit based on aesthetic concerns. Accordingly, we reverse the judgment of the trial court granting a writ of mandate, and direct it to enter a new judgment denying the writ of mandate. (*Harris* v. *City of Costa Mesa, supra,* 25 Cal.App.4th at pp. 972-976.)

## III

### *Breneric's Appeal*

The trial court sustained Del Mar's demurrer to Breneric's section 1983 claim without leave to amend. Breneric argues this was error.[6]

---

uphold the DRB's ruling. Breneric does not support this contention with relevant citations to the administrative record, and the record shows the contrary. The design problem created by the incompatibility of a glass-paneled roof deck with the existing architecture was raised by the DRB at its April 1993 hearing, and was considered by the city council at its July 1993 discussion of Breneric's original appeal. After the city council remanded the case to the DRB for further consideration, Breneric did not change the design to eliminate the glass-paneled roof deck and therefore that issue remained a question for the DRB to consider. To deny Breneric's application, the DRB relied on the finding that the glass-paneled roof deck was not consistent with the architectural style of the existing structure, and Breneric's counsel conceded at the February city council hearing on Breneric's appeal of the DRB ruling that "there is no question that we are looking at two findings, two adverse findings that were made by the DRB." The administrative record demonstrates that the glass-paneled roof deck was still part of the project when the city council evaluated it in February 1994, and that significant discussion of this issue was absent at the city council hearing in February 1994 because Breneric had offered to change the design of the deck if the siting issue could be satisfactorily resolved.

[6]Del Mar's appellate brief does not argue that a finding of the validity of its land use determination is fatal to Breneric's section 1983 claim. (But see *County of Butte* v. *Bach*

A. *Standards for Review of Demurrer to Section 1983 Claim*

■ The standard principles for reviewing the sufficiency of a complaint against a general demurrer are well established. We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. (*Moore* v. *Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].) We also disregard allegations which are contrary to law or to facts which may be judicially noticed (*Fundin* v. *Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955 [199 Cal.Rptr. 789]) or which are contradicted by the express terms of an exhibit incorporated into the complaint. (*Alphonzo E. Bell Corp.* v. *Bell etc. Synd.* (1941) 46 Cal.App.2d 684, 691 [116 P.2d 786].) We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context, to determine whether the complaint states facts sufficient to constitute a cause of action. (*Pruyn* v. *Agricultural Ins. Co.* (1995) 36 Cal.App.4th 500, 513 [42 Cal.Rptr.2d 295].)

■ A plaintiff seeking recovery under section 1983 must plead more than constitutional "buzzwords" to survive demurrer. (*Burchett* v. *City of Newport Beach* (1995) 33 Cal.App.4th 1472, 1481 [40 Cal.Rptr.2d 1].) The plaintiff must allege specific and nonconclusory facts showing the defendant's acts deprived him of a right, privilege or immunity secured by the federal Constitution or federal laws. (*Duffy* v. *City of Long Beach* (1988) 201 Cal.App.3d 1352, 1360 [247 Cal.Rptr. 715].)

Breneric's complaint alleged Del Mar's denial of the design review permit was actionable under section 1983 because Breneric was thereby deprived of substantive due process and equal protection and the property was taken without just compensation.

B. *The Complaint Does Not Allege Facts Sufficient to Show That Del Mar's Denial of the Permit Violated Breneric's Right to Substantive Due Process*

■ Breneric's principal contention is that the section 1983 claim sufficiently alleged a denial of substantive due process. Breneric first argues the allegation that Del Mar's denial of the permit was arbitrary and capricious is alone sufficient to state a claim under section 1983 without demonstrating that Breneric was deprived of a protected property interest. Breneric also

(1985) 172 Cal.App.3d 848, 866-867 [218 Cal.Rptr. 613] [judgment affirming validity of zoning ordinance and enforcing ordinance against property owner precludes property owner from recovering damages against agency under a section 1983 claim].) We therefore reach the merits of Breneric's claim of error regarding his section 1983 claim.

argues the complaint adequately alleged deprivation of a protected property interest.

### 1. *The Complaint Does Not Allege Del Mar's Acts Deprived Breneric of a Protected Property Interest*

■ "To state a due process cause of action under section 1983, a party must, as a threshold matter, allege a liberty or property interest within the protection of the Fourteenth Amendment. [Citation.] A property interest is defined as 'a legitimate claim of entitlement to [a benefit].' [Citation.] Thus, '[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it.' [Citation.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 319 [216 Cal.Rptr. 718, 703 P.2d 58].)

Numerous courts have held that, in the context of land use and zoning decisions, a person cannot state a section 1983 claim absent a foundational showing that the government's action deprived him of a land use to which he was entitled. (See, e.g., *Gunkel* v. *City of Emporia, Kan.* (10th Cir. 1987) 835 F.2d 1302, 1304-1305; *MacKenzie* v. *City of Rockledge* (11th Cir. 1991) 920 F.2d 1554, 1559; *United Land Corp. of America* v. *Clarke* (4th Cir. 1980) 613 F.2d 497, 501.) In *RRI Realty Corp.* v. *Inc. Village of Southampton* (2d Cir. 1989) 870 F.2d 911, the court specifically addressed whether denial of a discretionary building permit could provide the foundation for a section 1983 claim. In *RRI*, a condition to issuance of the building permit was approval by an architectural review board with discretion to deny applications for buildings inharmonious with the neighborhood. *RRI* concluded that when the plaintiff has applied for a permit for a particular land use and the governmental agency is vested with significant discretion to grant or deny the application, rejection of the application, even if alleged to be arbitrary and capricious, cannot form the basis for a section 1983 claim because the plaintiff had no constitutionally protected property right to the permit. (870 F.2d at pp. 915-920.)

Amicus curiae PLF, citing *Nollan, supra,* 483 U.S. 825 and *DeBlasio* v. *Zoning Bd. of Adjustment* (3d Cir. 1995) 53 F.3d 592, argues that Breneric's ownership of the property alone suffices as a protected property interest because Breneric has the right reasonably to use the property. However, *Nollan* did not hold that a property owner has an unfettered right to build. *Nollan* recognized that the right to build can be "subjected to legitimate permitting requirements" (*Nollan, supra,* 483 U.S. at pp. 833-834, fn. 2 [107 S.Ct. at p. 3147]), and the government may constitutionally condition land use permits on aesthetic considerations even though a condition may restrict

a use by or impose costs on the owner. (*Ehrlich* v. *City of Culver City, supra*, 12 Cal.4th at p. 886.)

We recognize that *DeBlasio* held that a complaint alleging the arbitrary and capricious denial of a requested zoning variance stated a section 1983 claim. *DeBlasio* concluded mere ownership entitled the owner to use and enjoy his property and this entitlement was a constitutionally protected property interest upon which a section 1983 claim could be premised. (*DeBlasio* v. *Zoning Bd. of Adjustment, supra*, 53 F.3d at p. 600.) However, this aspect of *DeBlasio* does not appear to have been followed in any other circuit. Moreover, *DeBlasio*'s holding appears irreconcilable with the numerous authorities, cited by the dissent in *DeBlasio* (*id.* at p. 604), which reached a contrary conclusion. (See, e.g., *Spence* v. *Zimmerman* (11th Cir. 1989) 873 F.2d 256, 258 [no substantive due process claim arises from denial of discretionary permit because owner lacks protectible property interest in discretionary permit]; *Carolan* v. *City of Kansas City, Mo.* (8th Cir. 1987) 813 F.2d 178, 181 [there is no substantive due process claim unless plaintiff is deprived of permit to which he is statutorily entitled]; *Yale Auto Parts, Inc.* v. *Johnson* (2d Cir. 1985) 758 F.2d 54, 58-59 [complaint alleging agency officials acted arbitrarily, capriciously and in concert in denying discretionary land use permit does not state a section 1983 claim because plaintiff lacked protectible property interest in discretionary permit].)

We are not persuaded by *DeBlasio*'s "mere ownership" standard and favor the apparent majority view, expressed in *Gardner* v. *Baltimore Mayor & City Council* (4th Cir. 1992) 969 F.2d 63, that denial of a discretionary land use permit does not infringe on a constitutionally protected property interest for purposes of section 1983. *Gardner* began its analysis by noting that a section 1983 claim requires the plaintiff to be deprived of a cognizable property interest, and without a property interest "there is no need to reach the question of whether a purported deprivation was arbitrary or capricious." (969 F.2d at p. 68.) *Gardner* also recognized that the Fourteenth Amendment does not create a property interest. A property interest is " 'created and . . . defined by existing rules or understandings that stem from an independent source such as state law . . . .' " (969 F.2d at p. 68, quoting *Board of Regents* v. *Roth* (1972) 408 U.S. 564, 577 [92 S.Ct. 2701, 2709, 33 L.Ed.2d 548].) *Gardner* noted that a property interest does not exist merely because the owner has an abstract need or desire or unilateral expectation of the interest, but instead the plaintiff must have a " 'legitimate claim of entitlement to it.' " (*Ibid.*) Applying the *Roth* "claim of entitlement" standard to substantive due process challenges to municipal land use decisions, *Gardner* held: "[W]hether a property-holder possesses a legitimate

claim of entitlement to a permit or approval turns on whether, under state and municipal law, the local agency lacks *all* discretion to deny issuance of the permit or to withhold its approval. Any significant discretion conferred upon the local agency defeats the claim of a property interest. [Citations.] Under this standard, a cognizable property interest exists 'only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured.' [Quoting *RRI Realty Corp.* v. *Inc. Village of Southampton, supra,* 870 F.2d at p. 918.] Moreover, the standard focuses on the amount of discretion accorded the issuing agency by law, not on whether or to what degree that discretion is actually exercised. 'Even if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest.' [(*Ibid.*)]" (*Gardner, supra,* at p. 68.)

*DeBlasio* would endow every disappointed property owner with a section 1983 claim, because every appeal from an adverse ruling necessarily encompasses a claim that the determination by the local agency was, from the owner's point of view, irrational, arbitrary, capricious and an abuse of the agency's discretion. (Cf. *Creative Environments, Inc.* v. *Estabrook* (1st Cir. 1982) 680 F.2d 822, 833.) The *DeBlasio* court is inconsistent with the oft-stated admonition that federal courts should not be converted into super zoning boards or zoning boards of appeal. (*Raskiewicz* v. *Town of New Boston* (1st Cir. 1985) 754 F.2d 38, 44 [federal courts do not sit as super zoning boards or zoning boards of appeal]; *Albery* v. *Reddig* (7th Cir. 1983) 718 F.2d 245; *Construction Ind. Ass'n, Sonoma Cty.* v. *City of Petaluma* (9th Cir. 1975) 522 F.2d 897, 906.) *DeBlasio* converts section 1983 into "a rack upon which every disappointed developer can stretch a community that fails to roll out the red carpet for him." (*Chongris* v. *Board of Appeals of Town of Andover* (1st Cir. 1987) 811 F.2d 36, 46.)

Because the section 1983 claim must allege denial of a property interest to which Breneric was entitled, we examine whether that foundational allegation is present here. The complaint alleges Del Mar "would have been compelled to approve the application under the relevant sections of the Del Mar Municipal Code" if Del Mar had not acted in a biased and unfair manner. However, under the municipal code, approval of the application was conditioned on the discretionary approval by the DRB of Breneric's design (§ 23.08.070), and this discretionary authority establishes that Breneric was not entitled as a matter of right to the permit. (*Guinnane* v. *San Francisco City Planning Com., supra,* 209 Cal.App.3d at pp. 736-740.) Because no protected property interest exists when there is significant discretion accorded the agency by law, regardless of whether or to what degree that

discretion is actually exercised (*Gardner* v. *Baltimore Mayor & City Council, supra*, 969 F.2d at p. 68), the complaint does not allege a protected property interest and therefore Breneric has not stated a section 1983 claim based on denial of substantive due process.

### 2. *The Complaint Alleges No Facts Demonstrating Del Mar Acted Arbitrarily or Capriciously*

■ Even were Breneric's complaint deemed to have alleged denial of a protected property interest, to state a section 1983 cause of action the complaint must also allege facts showing the agency's action was oppressive, abusive or legally irrational because it was not sufficiently related to any legitimate state interest. (*Stubblefield Construction Co.* v. *City of San Bernardino* (1995) 32 Cal.App.4th 687, 709-710 [38 Cal.Rptr.2d 413].) We conclude the complaint, when shorn of incompetent or conclusory allegations, does not allege facts demonstrating that Del Mar's denial of the design review permit was arbitrary or irrational. (*Duffy* v. *City of Long Beach, supra*, 201 Cal.App.3d at p. 1360; *Burchett* v. *City of Newport Beach, supra*, 33 Cal.App.4th at p. 1481; *Boccato* v. *City of Hermosa Beach* (1994) 29 Cal.App.4th 1797, 1809-1810 [35 Cal.Rptr.2d 282].)

Breneric's allegations of arbitrary or irrational action by Del Mar are based on the allegations that the unnamed DRB and city council members were hostile to Scola because of Scola's activities in buying, selling and developing properties in Del Mar, and that these members denied the design review permit to prevent Scola from engaging in development and sales activities in Del Mar. However, we disregard the allegations of the motives for the city council's and DRB's votes. A government official's motive for voting on a land use issue is, subject to exceptions not pertinent here, irrelevant to assessing the validity of the action. (*County of Butte* v. *Bach, supra*, 172 Cal.App.3d 848, 862, fn. 1.) In an analogous context, our Supreme Court in *Landgate, Inc.* v. *California Coastal Com., supra*, 17 Cal.4th 1006 concluded the motivation for the agency's decision was irrelevant. *Landgate* assessed whether an erroneous land use decision could be the foundation for the owner to recover damages for a temporary taking. The Court of Appeal, after concluding the denial of the permit was erroneous, held there was a temporary taking because the agency had an improper motive for denying the permit. Although the *Landgate* court did not dispute that denial of the permit had been mistaken (*id.* at p. 1010), it reversed the Court of Appeal and stated at page 1022: "The Court of Appeal erred in its attempt to divine, through the statements of commissioners and Commission staff and through circumstantial evidence, the 'true,' illegitimate, motive for the Commission's decision to deny Landgate's development permit. The

proper inquiry is not into the subjective motive of the government agency, but whether there is, objectively, sufficient connection between the land use regulation in question and a legitimate governmental purpose so that the former may be said to substantially advance the latter. [Citations.] This type of objective inquiry is consistent with the principle that courts do not delve into the individual purposes of decisionmakers in a quasi-adjudicative proceeding, but rather look to the findings made by the government agency and determine whether these are based on substantial evidence. [Citations.] Thus, we must determine not whether a sinister purpose lurked behind the Commission's decision, but rather whether the development restrictions imposed on the subject property substantially advanced some legitimate state purposes so as to justify the denial of the development permit."

Breneric cites *Davis* v. *City of San Diego* (1939) 33 Cal.App.2d 190 [91 P.2d 640] to argue that the validity of a legislative action may be tested by examining the purpose of the action. This aspect of *Davis* relied on *In re Smith* (1904) 143 Cal. 368 [77 P. 180]. *Smith* examined a law barring a certain type of business within a limited area, and the petitioner challenged the law, arguing the statute was an unreasonable intrusion on his business and was enacted with the improper motive of driving him from business and thereby perpetuating the monopoly of his competitor. *Smith* stated that evidence may be introduced to show that an ostensibly valid law is, in light of the objective conditions, an unreasonable exercise of police power; however, *Smith* cautioned: "[E]vidence in such cases will be admitted to show the existing conditions. *But this evidence will not go to motive.* If the conditions justify the enactment of the ordinance, the motives prompting its enactment are of no consequence. If the conditions do not justify the enactment, the inquiry as to motive becomes useless. . . . [F]or that reason the allegations touching the motive of the board of supervisors in passing the ordinance . . . have been and are entirely disregarded." (*Id.* at p. 373, italics added.)

The *Smith* holding is consonant with the *Landgate* approach. We disregard as irrelevant any allegations of the motive behind Del Mar's decision and instead examine the objective facts to determine whether there is a sufficient connection between the land use decision and a legitimate governmental purpose so that the former may be said to substantially advance the latter.

The complaint, pruned of the allegations regarding Del Mar's motive and intent behind the vote, alleges only that Breneric was denied the permit and that the denial lacked a rational relationship to and did not substantially advance a legitimate public interest. However, the allegation of denial of a permit, which denial does not advance a legitimate public purpose, is an

allegation that Del Mar violated state law, not a federal constitutional right, and is insufficient to state a section 1983 claim. (*Duffy* v. *City of Long Beach, supra,* 201 Cal.App.3d at p. 1360; see *Clark* v. *City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1178 [56 Cal.Rptr.2d 223].) The references to the Constitution in the complaint's allegations do not cure the insufficiency of that pleading. (*Burchett* v. *City of Newport Beach, supra,* 33 Cal.App.4th at p. 1481.) Breneric's allegations, as redacted, state a claim that has been described as follows: " 'Such a claim is too typical of the run of the mill dispute between a developer and a town planning agency, regardless of [developer's] characterizations of it and of defendants' alleged mental states, to rise to the level of a due process violation. The authority cited by [developer], as well as other cases, all suggest that the conventional planning dispute—at least when not tainted with fundamental procedural irregularity, racial animus, or the like—which takes place within the framework of an admittedly valid state subdivision scheme is a matter primarily of concern to the state and does not implicate the Constitution. This would be true even were planning officials to clearly violate, much less "distort" the state scheme under which they operate.' " (*Stubblefield Construction Co.* v. *City of San Bernardino, supra,* 32 Cal.App.4th at p. 712, quoting *Creative Environments, Inc.* v. *Estabrook, supra,* 680 F.2d at pp. 832-833.)

We conclude the complaint, although adequate to state a claim for administrative mandamus, does not sufficiently allege facts on which a section 1983 claim can be based. (See *Clark* v. *City of Hermosa Beach, supra,* 48 Cal.App.4th at p. 1178.)

C. *The Complaint Does Not Allege Facts Sufficient to Show That Denial of the Permit Denied Breneric Equal Protection*

Breneric next argues the complaint states a federal constitutional equal protection violation because it alleges Del Mar arbitrarily rejected Breneric's application but approved other projects by similarly situated applicants.

A legislative action will survive an equal protection attack as long as the challenged classification bears a rational relation to a legitimate government objective.[7] (*Kadrmas* v. *Dickinson Public Schools* (1988) 487 U.S. 450, 457-458 [108 S.Ct. 2481, 2486-2488, 101 L.Ed.2d 399].) Under

---

[7]We apply the "rational relationship" test rather than "strict scrutiny" because there is no suggestion Breneric suffered discrimination as a member of a "suspect class" or that a restriction on land use interferes with a "fundamental right." (*California Gillnetters Assn.* v. *Department of Fish & Game* (1995) 39 Cal.App.4th 1145, 1152-1153 [46 Cal.Rptr.2d 338].) Scola argues the legislative action deprived him of his fundamental right to work. Although the right to engage in a profession may entitle a person to procedural due process (*Endler* v.

the rational relationship test, the legislative action will be upheld unless "the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." (*Vance* v. *Bradley* (1979) 440 U.S. 93, 111 [99 S.Ct. 939, 949, 59 L.Ed.2d 171].) Under the rational relationship test for land use decisions, an equal protection claim will be rejected if the " 'wisdom [of the decision] is at least fairly debatable and it bears a rational relationship to a permissible state objective.' " (*Stubblefield Construction Co.* v. *City of San Bernardino, supra*, 32 Cal.App.4th at p. 713, quoting *Greene* v. *Town of Blooming Grove* (2d Cir. 1989) 879 F.2d 1061, 1063.)

In *Stubblefield*, the developer's equal protection claim alleged the city denied the permit because it intended to discriminate against him. The *Stubblefield* court concluded the motives of the legislators were irrelevant, but even assuming a discriminatory motive, an equal protection claim had not been shown. Applying the rational relationship test, the *Stubblefield* court noted that because property is unique it would be difficult if not impossible to provide evidence of disparate treatment of similarly situated persons. More importantly, the equal protection claim would nevertheless fail even were the developer singled out for different treatment, because the city provided a rational explanation for why the action treated the developer's property as it did. (*Stubblefield Construction Co.* v. *City of San Bernardino, supra*, 32 Cal.App.4th at pp. 714-715.)

Here, the complaint shows that denial of the permit bore a rational relationship to a permissible governmental objective because the complaint attached as an exhibit the city council's resolution denying Breneric's application. The resolution declared the proposed development was rejected for transgressing aesthetic considerations, which are legitimate state objectives (*Harris* v. *City of Costa Mesa, supra*, 25 Cal.App.4th at p. 973; *Dore* v. *County of Ventura, supra*, 23 Cal.App.4th at p. 330), and the facts cited in the resolution as the basis for Del Mar's determination show that the " 'wisdom [of the decision] is at least fairly debatable.' " (*Stubblefield Construction Co.* v. *City of San Bernardino, supra*, 32 Cal.App.4th at p. 713.) Because the face of the complaint shows the decision bore a rational relationship to a legitimate state objective, the complaint does not allege facts sufficient to state a section 1983 claim for denial of equal protection.

*Schutzbank* (1968) 68 Cal.2d 162, 168-170 [65 Cal.Rptr. 297, 436 P.2d 297]) and legislative classifications discriminating against a suspect class will be overturned absent a compelling state interest (*Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 16-22 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]), there is no fundamental right to engage in a particular occupation for equal protection purposes. (*California Gillnetters Assn.* v. *Department of Fish & Game, supra*, 39 Cal.App.4th at p. 1155.)

D. *The Complaint Alleges No Facts Sufficient to Show Breneric's Section 1983 Claim Based on a "Taking" Was Ripe*

Breneric contends the complaint alleges a taking without just compensation in violation of his Fifth Amendment rights and therefore states a section 1983 cause of action. Breneric argues that because the complaint alleges the denial of the permit did not substantially advance a legitimate public interest it adequately alleges a taking claim.[8]

A demurrer may be sustained when the complaint shows on its face the claim is not ripe for adjudication. (*Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 118 [109 Cal.Rptr. 799, 514 P.2d 111].) A plaintiff's action for damages under section 1983 based on a regulatory taking is premature until the plaintiff has (1) obtained a final determination from the administrative agency charged with enforcing the regulation (*Williamson Planning Comm'n* v. *Hamilton Bank* (1985) 473 U.S. 172, 186-187 [105 S.Ct. 3108, 3116-3117, 87 L.Ed.2d 126]) and (2) exhausted his state-provided remedies for receiving just compensation for the alleged taking. (*Id.* at pp. 194-197 [105 S.Ct. at pp. 3120-3122].)

California provides a procedure for an applicant to seek just compensation for alleged injuries from regulatory takings. The aggrieved applicant may file an action for administrative mandamus under Code of Civil Procedure section 1094.5 to determine whether the agency's regulatory restrictions constituted an impermissible taking rather than a valid exercise of its police powers; the applicant can seek damages if a taking is found either under Code of Civil Procedure section 1095 or, if the plaintiff wishes to preserve his right to a jury trial, by an action for inverse condemnation. (*Hensler* v. *City of Glendale* (1994) 8 Cal.4th 1, 13-19 [32 Cal.Rptr.2d 244, 876 P.2d 1043].) Only after those avenues have been pursued and fail to yield just compensation for the alleged regulatory taking is a section 1983 claim ripe for adjudication. (Cf. *Sinaloa Lake Owners Ass'n* v. *City of Simi Valley* (9th

---

[8]Breneric's complaint also alleged Del Mar's actions denied Breneric all economically viable use of the land, which is an alternative basis for a court to determine there has been a taking. (*Tahoe Keys Property Owners' Assn.* v. *State Water Resources Control Bd.* (1994) 23 Cal.App.4th 1459, 1475 [28 Cal.Rptr.2d 734].) Breneric on appeal has limited his "taking" argument to the claim that the complaint adequately pleaded a taking because the denial did not substantially advance a legitimate state interest, and we therefore deem abandoned any claim that the complaint was adequate under the "no economically viable use" allegation. (*Tan* v. *California Fed. Sav. & Loan Assn.* (1983) 140 Cal.App.3d 800, 811 [189 Cal.Rptr. 775] [points not argued on appeal deemed waived or abandoned].) Relevant authority suggests this concession to be prudent. (See *Terminals Equipment Co.* v. *City and County of San Francisco* (1990) 221 Cal.App.3d 234, 244 [270 Cal.Rptr. 329] [demurrer to takings claim sustained despite conclusory allegation of no economically viable use where complaint also alleged facts showing property could be used].)

Cir. 1989) 882 F.2d 1398, 1402-1403, overruled on other grounds in *Armendariz* v. *Penman* (9th Cir. 1996) 75 F.3d 1311, 1326; *Long Beach Equities, Inc.* v. *County of Ventura* (1991) 231 Cal.App.3d 1016, 1041 [282 Cal.Rptr. 877].)

The face of the complaint shows Breneric had not exhausted those state remedies but instead was pursuing those remedies in this action. Breneric cites no authority, and we are aware of none, that permits an aggrieved applicant to assert a section 1983 claim based on a regulatory taking claim before his state remedies have been exhausted. We conclude that to the extent Breneric's section 1983 claim was based on an assertion of a taking without just compensation it was premature and Del Mar's demurrer was properly sustained on that basis.

### DISPOSITION

The judgment granting the writ of mandate is reversed and the trial court is directed to enter a new judgment denying the writ of mandate; in all other respects the judgment is affirmed. Breneric shall pay costs on appeal.

Haller, Acting P. J., and McIntyre, J., concurred.