Chief Justice Rehnquist,
with whom Justice O’Con-nor, Justice Kennedy, and Justice Thomas join,
concurring in the judgment.
I agree that the judgment of the Court of Appeals should be affirmed. Whatever the reasons for petitioners’ chosen course of litigation in the state courts, it is quite clear that they are now precluded by the full faith and credit statute, 28 U. S. C. § 1738, from relitigating in their 42 U. S. C. § 1983 action those issues which were adjudicated by the California courts. See Migra v. Warren City School Dist. Bd. of Ed., 465 U. S. 75, 84 (1984); Allen v. McCurry, 449 U. S. 90, 103-105 (1980). There is no basis for us to except from § 1738’s reach all claims brought under the Takings Clause. See, e. g., Kremer v. Chemical Constr. Corp., 456 U. S. 461, 485 (1982). I write separately to explain why I think part of our decision in Williamson County Regional Planning Comm’n v. Hamilton Bank of Johnson City, 473 U. S. 172 (1985), may have been mistaken.
In Williamson County, the respondent land developer filed a § 1983 suit in federal court alleging a regulatory takings claim after a regional planning commission disapproved respondent’s plat proposals, but before respondent appealed that decision to the zoning board of appeals. Id., at 181-182. Rather than reaching the merits, we found the claim was brought prematurely. Id., at 200. We first held that the claim was “not ripe until the government entity charged with implementing the regulations [had] reached a final decision regarding the application of the regulations to the property at issue.” Id., at 186. Because respondent failed to seek variances from the planning commission or the zoning board of appeals, we decided that respondent had failed to meet the final-decision requirement. Id., at 187-191. We then *349 noted a “second reason the taking claim [was] not yet ripe”: “respondent did not seek compensation through the procedures the State [had] provided for doing so.” Id., at 194. Until the claimant had received a final denial of compensation through all available state procedures, such as by an inverse condemnation action, we said he could not “claim a violation of the Just Compensation Clause.” . Id., at 195-196.
It is not clear to me that Williamson County was correct in demanding that, once a government entity has reached a final decision with respect to a claimant’s property, the claimant must seek compensation in state court before bringing a federal takings claim in federal court. The Court in Williamson County purported to interpret the Fifth Amendment in divining this state-litigation requirement. See, e. g., id., at 194, n. 13 (“The nature of the constitutional right. . . requires that a property owner utilize procedures for obtaining compensation before bringing a §1983 action”). More recently, we have referred to it as merely a prudential requirement. Suitum v. Tahoe Regional Planning Agency, 520 U. S. 725, 733-734 (1997). It is not obvious that either constitutional or prudential principles require claimants to utilize all state compensation procedures before they can bring a federal takings claim. Cf. Patsy v. Board of Regents of Fla., 457 U. S. 496, 516 (1982) (holding that plaintiffs suing under § 1983 are not required to have exhausted state administrative remedies).[1]
The Court today attempts to shore up the state-litigation requirement by referring to Fair Assessment in Real Estate Assn., Inc. v. McNary, 454 U. S. 100 (1981). Ante, at 347. *350 There, we held that the principle of comity (reflected in the Tax Injunction Act, 28 U. S. C. § 1341) bars taxpayers from asserting § 1983 claims against the validity of state tax systems in federal courts. 454 U. S., at 116. Our decision that such suits must be brought in state court was driven by the unique and sensitive interests at stake when federal courts confront claims that States acted impermissibly in administering their own tax systems. Id., at 102-103, 107-113. Those historically grounded, federalism-based concerns had led to a longstanding, “fundamental principle of comity between federal courts and state governments ..., particularly in the area of state taxation,” a principle which predated the enactment of § 1983 itself. Id., at 103, 107-114. We decided that those interests favored requiring that taxpayers bring challenges to the validity of state tax systems in state court, despite the strong interests favoring federal court review of alleged constitutional violations by state officials. Id., at 115-116.
The Court today makes no claim that any such longstanding principle of comity toward state courts in handling federal takings claims existed at the time Williamson County was decided, nor that one has since developed. The Court does remark, however, that state courts are more familiar with the issues involved in local land-use and zoning regulations, and it suggests that this makes it proper to relegate federal takings claims to state court. Ante, at 347. But it is not apparent that any such expertise matches the type of historically grounded, federalism-based interests we found necessary to our decision in Fair Assessment. In any event, the Court has not explained why we should hand authority over federal takings claims to state courts, based simply on their relative familiarity with local land-use decisions and proceedings, while allowing plaintiffs to proceed directly to federal court in eases involving, for example, challenges to municipal land-use regulations based on the First Amendment, see, e. g., Renton v. Playtime Theatres, Inc., 475 U. S. *351 41 (1986); Young v. American Mini Theatres, Inc., 427 U. S. 50 (1976), or the Equal Protection Clause, see, e. g., Cleburne v. Cleburne Living Center, Inc., 473 U. S. 432 (1985); Village of Belle Terre v. Boraas, 416 U. S. 1 (1974). In short, the affirmative case for the state-litigation requirement has yet to be made.
Finally, Williamson County's state-litigation rule has created some real anomalies, justifying our revisiting the issue. For example, our holding today ensures that litigants who go to state court to seek compensation will likely be unable later to assert their federal takings claims in federal court. Ante, at 346-347. And, even if preclusion law would not block a litigant’s claim, the Rooker-Feldman doctrine might, insofar as Williamson County can be read to characterize the state courts’ denial of compensation as a required element of the Fifth Amendment takings claim. See Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U. S. 280 (2005). As the Court recognizes, ante, at 346-347, Williamson County all but guarantees that claimants will be unable to utilize the federal courts to enforce the Fifth Amendment’s just compensation guarantee. The basic principle that state courts are competent to enforce federal rights and to adjudicate federal takings claims is sound, see ante, at 347, and would apply to any number of federal claims. Cf. 28 U. S. C. § 2254 (providing for limited federal habeas review of state-court adjudications of alleged violations of the Constitution). But that principle does not explain why federal takings claims in particular should be singled out to be confined to state court, in the absence of any asserted justification or congressional directive.[2]
*352 * *
I joined the opinion of the Court in Williamson County. But further reflection and experience lead me to think that the justifications for its state-litigation requirement are suspect, while its impact on takings plaintiffs is dramatic. Here, no court below has addressed the correctness of Williamson County, neither party has asked us to reconsider it, and resolving the issue could not benefit petitioners. In an appropriate case, I believe the Court should reconsider whether plaintiffs asserting a Fifth Amendment takings claim based on the final decision of a state or local government entity must first seek compensation in state courts.

 In creating the state-litigation rule, the Court, in addition to relying on the Fifth Amendment’s text, analogized to Ruckelshaus v. Monsanto Co., 467 U. S. 986 (1984), and Parratt v. Taylor, 451 U. S. 527 (1981). As several of petitioners’ amid in this case have urged, those cases provided limited support for the state-litigation requirement. See Brief for Defenders of Property Rights et al. as Amici Curiae 9-12; Brief for Elizabeth J. Neumont et al. as Amici Curiae 10-14.

 Indeed, in some States the courts themselves apply the state-litigation requirement from Williamson County Regional Planning Comm’n v. Hamilton Bank of Johnson City, 473 U. S. 172 (1985), refusing to entertain any federal takings claim until the claimant receives a final denial of compensation through all the available state procedures. See, e.g., Breneric Assoc. v. City of Del Mar, 69 Cal. App. 4th 166, 188-189, 81 *352 Cal. Rptr. 2d 324, 338-339 (1998); Melillo v. City of New Haven, 249 Conn. 138, 154, n. 28, 732 A. 2d 133, 143, n. 28 (1999). This precludes litigants from asserting their federal takings claim even in state court. The Court tries to avoid this anomaly by asserting that, for plaintiffs attempting to raise a federal takings claim in state court as an alternative to their state claims, Williamson County does not command that the state courts themselves impose the state-litigation requirement. Ante, at 346. But that is so only if Williamson County’s state-litigation requirement is merely a prudential rule, and not a constitutional mandate, a question that the Court today conspicuously leaves open.