Filed 10/23/13  Wilson v. City of Laguna Beach CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHAEL K. WILSON,<br><br>   Plaintiff and Appellant,<br><br>   v.<br><br>CITY OF LAGUNA BEACH,<br><br>   Defendant and Respondent;<br><br>MARK E. TOWFIQ et al.,<br><br>   Real Parties in Interest. | G045933<br>(Consolidated with G046001)<br><br>(Super. Ct. No. 30-2011-00481001)<br><br>O P I N I O N |

Appeals from judgment and order of the Superior Court of Orange County, Ronald L. Bauer, Judge.  Judgment and order affirmed.

Allen Matkins Leck Gamble Mallroy & Natsis, K. Erik Friess and Nicholas S. Shantar for Plaintiff and Appellant.

Rutan & Tucker and Philip D. Kohn for Defendant and Respondent.

Gaines & Stacey, Sherman L. Stacey and Nanci S. Stacey for Real Parties in Interest.

Plaintiff Michael K. Wilson appeals from both a judgment denying his petition for a writ of mandate and an order dissolving a preliminary injunction. The appeals have been consolidated for decision. The action involves defendant City of Laguna Beach's decision to approve real parties in interest Mark E. Towfiq's and Carol Nakahara's (collectively the Towfiqs) application for a permit to demolish the home and related improvements on an oceanfront lot and to build a new, larger, single family residence on the site. The superior court upheld defendant's decision, rejecting plaintiff's claim the approval of the Towfiqs' project failed to comply with the California Environmental Quality Act. (Pub. Resources Code, § 21000 et seq.; CEQA.) On appeal, plaintiff repeats his claims concerning CEQA noncompliance. We conclude his claims lack merit and affirm the trial court's rulings.

FACTS AND PROCEDURAL BACKGROUND

Plaintiff owns an oceanfront parcel in the Rockledge section of Laguna Beach improved with a residence over 7,200 square feet in size, plus an additional 950 square foot garage. The Towfiqs are the trustees of a family trust that acquired a 20,000 to 25,000 square foot oceanfront lot adjacent to plaintiff's residence. The properties are zoned for low density residential use.

Because the Towfiqs' lot borders the ocean, defendant's Local Coastal Program identifies it as being in an environmentally sensitive area. When they acquired the lot, it was improved with two or three 1940's era residential structures containing less than 1,600 square feet of living space.

In late 2010, the Towfiqs submitted an application to defendant's community development department (CDD) to demolish the lot's current structures and construct a three-story, 7,955 square foot single family residence with an attached 903

2

square foot garage, over 900 square feet for mechanical equipment and storage, and a 3,000 square foot covered patio.  CDD's staff reports note the Towfiqs were (1) not seeking any variances for the project, and (2) replacing an existing residence with a new one that complied with the rules and regulations of defendant's municipal code would not cause any adverse environmental impacts.  After two hearings, defendant's design review board issued an approval for a development that, in addition to other conditions, reduced the size of the home to 7,692 square feet and moved the structure farther away from plaintiff's lot.

Plaintiff appealed the ruling to the city council.  On March 22, 2011, it approved the project with some additional modifications.  Over plaintiff's objection, the city council determined the project was categorically exempt from CEQA.

Plaintiff filed this action and sought a preliminary injunction to stop the Towfiqs from proceeding with the project.  The court granted the preliminary injunction.  But after a hearing in October 2011, the court issued a statement of decision, entered both a judgment denying plaintiff's petition, and dissolved the injunction.  This court denied plaintiff's petition seeking a writ of supersedeas prohibiting the Towfiqs from proceeding with their project.

DISCUSSION

*1.  Background*

"CEQA and its implementing administrative regulations (CEQA Guidelines [Cal. Code Regs., tit. 14, § 15000 et seq.]) establish a three-tier process to ensure that public agencies inform their decisions with environmental considerations.  [Citation.] The first tier is jurisdictional, requiring that an agency conduct a preliminary review to determine whether an activity is subject to CEQA." (*Muzzy Ranch Co. v. Solano County*

3

*Airport Land Use Com.* (2007) 41 Cal.4th 372, 379-380, fn. omitted.) "CEQA applies if the activity is a 'project' under the statutory definition, unless the project is exempt. [Citations.]" (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1373; see also Pub. Resources Code, § 21065.)

There is no dispute the Towfiqs' proposed demolition of the existing improvements on their lot and construction of a new residence and appurtenant structures qualifies as a "project." The Public Resources Code defines the term to include "an activity that involves the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (Pub. Resources Code, § 21065, subd. (c).) The Towfiqs needed to obtain approval from defendant to proceed with demolishing the existing improvements and constructing their new home.

"The second tier concerns exemptions from CEQA review," which include "categorical exemptions or 'classes of projects' that the . . . agency has determined to be exempt per se because they do not have a significant effect on the environment. [¶] . . . [¶] If a public agency properly finds that a project is exempt from CEQA, no further environmental review is necessary. [Citation.] The agency need only prepare and file a notice of exemption [citations], citing the relevant statute or section of the CEQA Guidelines and including a brief statement of reasons to support the finding of exemption [citation]." (*Muzzy Ranch Co. v. Solano County Airport Land Use Com., supra,* 41 Cal.4th at p. 380.) The "third tier applies if the agency determines substantial evidence exists that an aspect of the project may cause a significant effect on the environment." (*Id.* at p. 381.)

The primary issues in this appeal concern the second tier of the CEQA analysis; whether defendant erred in finding the Towfiqs' project exempt and, even

4

assuming one or more exemptions apply, are there unusual circumstances creating a reasonable possibility the activity will have a significant effect on the environment.

The city council found the project exempt on two grounds. First, it concluded the existing facilities exemption in the CEQA Guidelines applied to the removal of the original improvements. It provides "[d]emolition and removal of individual small structures" such as a "single-family residence" or "[i]n urbanized areas, up to three single-family residences" are exempt from further CEQA review. (Cal. Code Regs, tit 14, § 15301, subd. (l)(1); Class 1.) Second, defendant found the exemption for "construction and location of limited numbers of new, small facilities or structures," such as a "single-family residence, or a second dwelling unit in a residential zone," covered the Towfiqs' proposal to build a new home on the property. (Cal. Code Regs., tit. 14, § 15303, subd. (a); Class 3.)

*2. Mootness*

The first issue is defendant's claim the appeal should be dismissed as moot because, after the trial court dissolved the preliminary injunction and this court denied plaintiff's petition for a writ of supersedeas, the Towfiqs proceeded to demolish the lot's existing structures.

The general rule is that "'[a]n appeal should be dismissed as moot when the occurrence of events renders it impossible for the appellate court to grant appellant any effective relief.' [Citation.]" (*Santa Monica Baykeeper v. City of Malibu* (2011) 193 Cal.App.4th 1538, 1547-1548.) Under this rule, the appeal is technically moot insofar as plaintiff's attack on the demolition of the original structures. As noted, plaintiff's effort to stop the Towfiqs' demolition of the existing structures ended with the dissolution of the trial court's preliminary injunction.

5

But plaintiff also contends the construction of the new home requires CEQA review because it fails to satisfy the Class 3 exemption and, even if that exemption applies, unusual circumstances exist barring defendant's reliance on it in this case. This argument has merit. One exception to the mootness doctrine is "when a material question remains for the court's determination [citation]." (*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 480.) "A material question exists when the judgment, if left unreversed, would preclude a party from litigating its liability [or rights] on an issue still in controversy. [Citations.]" (*Viejo Bancorp, Inc. v. Wood* (1989) 217 Cal.App.3d 200, 205.) Given the relationship between the two exemptions at issue in this case, we conclude it is appropriate to consider the parties' arguments on all matters. Thus, we decline defendant's request to dismiss the appeal.

*3. The CEQA Exemptions*

Plaintiff attacks the findings the Towfiqs' development is exempt from further CEQA review for several reasons. One contention is that neither of the cited exemptions covers the entire project and defendant could not avoid CEQA review by fragmenting it into two smaller projects. In addition, he argues the Class 1 exemption does not apply because it is limited to a "project [that] involves negligible or no expansion of an existing use." (Cal. Code Regs., tit. 14, § 15301.) Alternatively, plaintiff claims the Class 3 exemption is inapplicable because it does not expressly authorize demolition of any existing structures.

A "court reviews decisions made during an agency's preliminary review for a prejudicial abuse of discretion. [Citation.] When faced with a challenge to an agency's exemption determination, the court considers whether the agency proceeded in the manner required by law and whether its determination is supported by substantial

6

evidence.  [Citations.]  The scope of an exemption may be analyzed as a question of statutory interpretation and thus subject to independent review.  [Citations.]  But 'the substantial evidence test governs our review of the [agency's] factual determination that a project falls within a categorical exemption.'  [Citation.]" (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist., supra,* 139 Cal.App.4th at pp. 1381-1382.)

Plaintiff first argues defendant erred by treating the demolition of the current improvements separate from the Towfiqs' construction of a new residence.  He notes the Guidelines define the term "project" to mean "the whole of an action, which has a potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment" (Cal. Code Regs., tit. 14, § 15378, subd. (a)).  Thus, he claims defendant's approach amounted to "project piecemealing."

We disagree.  While "[i]t would be improper for an agency to divide a project into separate parts to avoid CEQA review[,] . . . where the agency considers the project as a whole and determines the combined effect of two exemptions places the entire project outside the scope of CEQA, no improper segmentation has occurred. [Citation.]" (*California Farm Bureau Federation v. California Wildlife Conservation Bd.* (2006) 143 Cal.App.4th 173, 191; see *Surfrider Foundation v. California Coastal Com.* (1994)  26 Cal.App.4th 151, 155 ["Commission's action was exempt from CEQA due to the combined application of two types of exemptions"].)  Here, the primary focus of the Towfiqs' application was the construction of a new residence on the lot.  Because there was an existing residence and appurtenant structures, it was necessary to demolish them to allow the new construction.  Defendant did not divide the project into two separate parts and consider them individually.  Rather, it reviewed the demolition of the current improvements and new construction together and concluded "the combined effect of [the

7

Class 1 and Class 3] exemptions place[d] the entire project outside the scope of CEQA." (*California Farm Bureau Federation v. California Wildlife Conservation Bd., supra,* 143 Cal.App.4th at p. 191.)

Plaintiff next argues the Class 1 exemption is inapplicable because (1) it expressly bars any expansion in the property's existing use and (2) does not authorize construction of a new structure. As for the second ground, it is resolved by our previous conclusion defendant properly considered the combined effect of the Class 1 and Class 3 exemptions in finding no further CEQA review was required.

The first ground misconstrues the definition of the term "use" in the Class 1 exemption. Section 15301 of Title 14 of the California Code of Regulations provides: "Class 1 consists of the operation, repair, maintenance, permitting, leasing, licensing, or minor alteration of existing public or private structures, facilities, mechanical equipment, or topographical features, involving negligible or no expansion of use beyond that existing at the time of the lead agency's determination." As noted, "[e]xamples" of projects this exemption covers included "[d]emolition and removal of individual small structures," such as "[o]ne single-family residence" and "[a]ccessory (appurtenant) structures including garages, carports, patios, swimming pools, and fences." (Cal. Code Regs., tit. 14, § 15301, subd. (l)(1) & (4).)

In construing a statute or regulation a court """"'select[s] the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]"""" (*Valley Advocates v. City of Fresno* (2008) 160 Cal.App.4th 1039, 1069-1070.) As the foregoing language reflects, Class 1 covers activities relating to real property improvements. Thus, the term "use" appearing in the Guideline relates to the nature of the activity previously conducted on the property. In this case, the original improvements consisted of a single family

8

residence and appurtenant structures. The Towfiqs' project involves removing the existing improvements and building a new single family residence and appurtenant structures. Consequently, while the new residence will be much larger than the prior home, the Towfiqs' proposal conforms to the property's existing use. (See *Bloom v. McGurk* (1994) 26 Cal.App.4th 1307, 1312 ["Since it is undisputed that there was no change in . . . operations incident to renewal of the . . . permit, the project falls squarely within the highlighted language of the class 1 categorical exemption"].)

Plaintiff cites no authority for his claim defendant had to consider how the prior owners used the parcel's improvements. Nor does he provide any interpretation of the Class 1 exemption that would require such a finding. His reference to another part of the Class 1 exemption that limits "[a]dditions to existing structures" is unavailing because it is inapplicable in this context. Thus, we reject plaintiff's attack on the applicability of Class 1 to defendant's approval of the Towfiqs' project. (Cal. Code Regs., tit. 14, § 15301, subd, (e).)

The Class 3 exemption applies to the "construction and location of limited numbers of new, small facilities or structures," such as a "single-family residence, or a second dwelling unit in a residential zone." (Cal. Code Regs., tit. 14, § 15303, subd. (a).) Plaintiff attacks the applicability of this exemption by merely repeating his claim that it does not expressly authorize the demolition of an existing structure or improvements. In light of our prior conclusion defendant properly considered the combined effect of the Class 1 and 3 exemptions to the Towfiqs' project, this argument lacks merit.

Therefore, we conclude defendant properly found the Towfiqs' project exempt from CEQA review.

*4. The Unusual Circumstances Exception*

Alternatively, plaintiff contends that even if the foregoing exemptions apply, several factors inherent in the Towfiqs' project preclude the use of a categorical exemption to avoid CEQA review because "there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances." (Cal. Code Regs., tit. 14, § 15300.2, subd. (c).)

If an agency finds, "based on substantial evidence in the record, that the project falls within a categorical exemption," a party challenging the finding must present evidence an exception to the exemption is applicable. (*Hines v. California Coastal Com.* (2010) 186 Cal.App.4th 830, 855.) California Code of Regulations, title 14, section 15300.2, subdivision (c) declares, "[a] categorical exemption shall not be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances."

"There is a split of authority on the appropriate standard of judicial review of a question of fact when the issue is whether a project that would otherwise be found categorically exempt is subject to one of [the]. . . exceptions . . . . 'Some courts . . . hold[] that a finding of categorical exemption cannot be sustained if there is a "fair argument" based on substantial evidence that the project will have significant environmental impacts, even where the agency is presented with substantial evidence to the contrary. [Citation.] Other courts apply an ordinary substantial evidence test . . ., deferring to the express or implied findings of the local agency that has found a categorical exemption applicable. [Citations.]'" (*Hines v. California Coastal Com., supra,* 186 Cal.App.4th at pp. 855-856.)

Plaintiff cites five factors he claims renders the unusual circumstances exception applicable to this case. Even applying the less deferential fair argument

10

standard we find none of the factors cited by plaintiff, either singularly or in combination, support the application of the unusual circumstances exception to this case.

First, plaintiff claims the project involves the demolition of historic "beach-cottage style structures." Since the demolition phase has been completed, this factor is no longer relevant. But even if the structures still existed, plaintiff could not prevail. The only evidence he cites in support of this argument are the historical resources element of defendant's general plan listing the beach cottage style as a type of architecture entitled to protection and the CDD's November 2010 report describing the original improvements as "built more than 50 years ago in a beach cottage style." What plaintiff ignores is that the historic resources element's list of properties eligible for registration as historic places did not include the original structures on Towfiqs' parcel and the CDD's report also states "the property is not listed on the Historical Inventory." In addition, the design review board's report to the city council in response to plaintiff's appeal noted (1) plaintiff failed to raise this issue during the board's proceedings, and (2), while "the historic preservation criterion allows the [b]oard to give special consideration to older structures, including those not listed on [defendant's] inventory of historic structures," it "did not find that demolition of the existing structures [on the Towfiqs' parcel] warranted further consideration." Plaintiff fails to cite to anything to contradict this conclusion.

A second purported unusual circumstance factor cited by plaintiff is an historical survey prepared at his expense, noting the previous owners of the property (the Bunkalls) had a son who later became what is described as "a famous artist . . . ." But the Bunkalls' daughters attended the hearing on plaintiff's appeal and urged the city council to deny it, objecting to his use of their "brother . . . and his death . . . as one of the reasons why the Towfiqs should be denied the right to build their . . . home." Plaintiff does not explain how the fact that the prior owners' son, long before gaining artistic fame, spent part of his childhood living on the property justifies further environmental review.

11

Third, plaintiff relies on "evidence that the project site houses an extensive garden of rare palm trees . . . ." But the CDD's February 2011 staff report on the project noted the Towfiqs had agreed to retain "[a] total of 16 palm trees," including several located along the property line with plaintiff's lot . Thus, some of the palm trees will be preserved. At the city council's hearing on plaintiff's appeal, Mark Towfiq stated "the Palm Society" told him many of the trees scheduled for removal "were not exceptional specimens" and said he was willing to either sell or donate them to either the society or defendant. Plaintiff fails to cite other evidence suggesting the loss of some palm trees would constitute a significant adverse environmental effect.

Another purported unusual circumstance plaintiff cites is a claim "[defendant's] own staff determined the project has the potential to have water quality impacts." Again, he fails to accurately describe the contents of the administrative record. The CDD's November 2010 staff report on the Towfiqs' application states, "[w]ater runoff and erosion has been mitigated by reducing impervious areas with a permeable turf block driveway and other outdoor surfaces." In addition, its February 2011 report recognized the Towfiqs were not requesting any variances for their project and because "the proposed project is in compliance with the applicable rules and regulations set forth in the Municipal Code," it "will not have any significant adverse impacts on the environment." Thus, plaintiff fails to show "a reasonable possibility that the environmental impact will be *significant.* " (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist., supra,* 139 Cal.App.4th at p. 1390.)

Finally, plaintiff focuses on the size of the Towfiqs' proposed new residence. But the record shows the home will be similar in size to neighboring homes, including plaintiff's home. "As explicated in case law, an unusual circumstance refers to 'some feature of the project that distinguishes it' from others in the exempt class.

12

[Citation.]  In other words, 'whether a circumstance is "*unusual*" is judged relative to the *typical* circumstances related to an otherwise typically exempt project.'  [Citation.]"  (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist., supra,* 139 Cal.App.4th at p. 1381.)  Given the similarity in nature and size of the Towfiqs' development with that of nearby parcels, this factor fails to support a fair argument the unusual circumstances exception applies to this case.

## DISPOSITION

The judgment and order dissolving the preliminary injunction are affirmed. Respondents are entitled to recover their costs on appeal.


RYLAARSDAM, ACTING P. J.

WE CONCUR:


BEDSWORTH, J.


MOORE, J.

13